UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SARSVATKUMAR PATEL,

                Plaintiff,

    -against-

LONG ISLAND UNIVERSITY,

                Defendants.
------------------------------------------------------------------X

**VERIFIED COMPLAINT**

*Jury Trial Demanded*

Plaintiff SARSVATKUMAR PATEL, by and through his attorneys, TILTON BELDNER LLP, respectfully alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. In September 2012, Plaintiff Sarsvatkumar Patel ("Dr. Patel") began working for Defendant Long Island University ("LIU") as an Assistant Professor at the University's College of Pharmacy and Health Science. At the time of his hiring, Dr. Patel, who was born in India, had an impeccable resume including publications at several highly respected scientific journals, numerous professional presentations, and high quality research achievements in the field of Pharmaceutical Sciences.

2. After joining the LIU faculty, Dr. Patel demonstrated an extraordinary commitment to the students he taught and mentored, and continued excellence in his professional career. As a result of his exemplary performance, following the 2012-13, and 2013-

1

14 school years, Dr. Patel was on track to be awarded tenure at LIU, and achieve his lifelong dream of becoming a full-time professor at an American university.

3. Unfortunately, Dr. Patel's dream never became a reality. In January 2015, Dr. Patel had the courage to speak up about what he believed to be discrimination in his department. Specifically, Dr. Patel participated in a lawsuit filed by one of his colleagues by filing a Sworn Affidavit in support of her claim that she was subject to discrimination. In addition, following the birth of his second child in January 2015, Dr. Patel exercised his rights under the Family Medical Leave Act ("FMLA") by taking a leave of absence to care for his newborn. In February 2015, while on leave, Dr. Patel was told by his direct supervisor, Division Director Rutesh Dave that "nobody takes leave this kind of leave," and that his taking leave could affect his prospects of receiving tenure. Alarmed by his supervisor's warning, Dr. Patel returned from FMLA leave early.

4. In May 2015, in recognition of Plaintiff's outstanding performance at LIU, the Faculty Review Committee, consisting of seven faculty members of the Pharmaceutical Sciences and Pharmacy Practice division, voted that Dr. Patel be re-appointed as a member of the faculty. However, the two LIU administrators who reviewed Dr. Patel's application, the Division Director and the Dean, rejected his candidacy, and decided against his re-appointment. In deciding against re-appointment, Dr. Dave specifically referenced the FMLA leave Dr. Patel had taken during that school year to care for his newborn baby. In addition, the other

administrator who rejected Dr. Patel's application, Dean Stephen Gross, was specifically referenced in the Sworn Affidavit that Plaintiff submitted on behalf of his colleague in her discrimination lawsuit just months prior. Significantly, Dr. Patel's qualifications and credentials were clearly superior to those faculty members who received reappointment, but who did not complain of discrimination or exercise their rights under the FMLA. Following the denial of his application for reappointment and tenure, Defendant unceremoniously terminated Dr. Patel's employment.

5. As more fully set forth below, in retaliating against Dr. Patel because of his good faith opposition to discriminatory practices, Defendant LIU violated Title VII of the Civil Rights Act of 1964 ("Title VII"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights ("NYCHRL"). In addition, Defendant willfully interfered with, discriminated and retaliated against Plaintiff for exercising his rights under the Family Medical Leave Act ("FMLA").

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 & 1343. This Court has supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendant.

7. Venue is proper in this case pursuant to 28 U.S.C. § 1391 because (1) the Defendant is located in Brooklyn, NY, which is located in the Eastern District of New York, and (2) the events which give rise to Dr. Patel's claims took place in Kings County, New York, which is located in the Eastern District of New York.

8. All conditions precedent to filing suit have been fulfilled. On or about March 31, 2016, Plaintiff filed a timely Charge of Discrimination with the United States States Equal Opportunity Commission ("EEOC"). The Charge of Discrimination was cross-filed with the New York State Division of Human Rights. On or about February 21, 2017, the EEOC issued Plaintiff a Notice of Right to Sue. Annexed hereto, and hereby incorporated into this Complaint, as Exhibit A, is a copy of Plaintiff's Notice of Right to Sue. This action is being brought within 90 days of Plaintiff's receipt of the Right to Sue Notice.

**PARTIES**

9. Plaintiff SARSVATKUMAR PATEL is a 35-year-old male individual, who is a resident and domiciliary of Montgomery County, PA. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendant Long Island University as that term is defined by Title VII, NYSHRL, NYCHRL, and the FMLA.

10. Defendant LONG ISLAND UNIVERSITY is a private, for-profit institution of higher learning that operates in New York State. Defendant's Brooklyn campus is located at 1 University Plaza, Brooklyn, NY 11201. Defendant's Brookville campus

is located at 700 Northern Blvd, Brookville, NY 11548. At all times relevant to this Complaint, Defendant LIU was Plaintiff's "employer," as that term is defined by Title VII, NYSHRL, NYCHRL, and the FMLA.

## FACTUAL ALLEGATIONS

*Background*

11. Plaintiff Sarsvatkumar Patel ("Dr. Patel") was born in India. In 2004, he received a Bachelor's Degree in Pharmacy. In 2006, Dr. Patel received a Master's Degree from India's prestigious National Institute of Pharmaceutical Education & Research. In 2010, he received a Ph.D from the same institution, while also serving as a Research Fellow.

12. In 2010, Dr. Patel traveled to the United States on a J-1, non-immigrant exchange visitor visa program. From 2010 to 2012, Dr. Patel was a Post-Doctoral Associate at the University of Minnesota, and conducted research work in the field of Pharmaceutical Sciences, serving in the Department of Pharmaceutics.

13. In September 2012, Dr. Patel began working on an H-1B non-immigrant visa for Defendant Long Island University ("LIU"). In particular, Dr. Patel was hired to be an Assistant Professor at LIU's Arnold & Marie Schwartz College of Pharmacy and Health Science, located at 75 DeKalb Avenue, Brooklyn, NY 11201.

14. Prior to joining LIU, Dr. Patel had published his research work in a number of peer-reviewed, high impact scientific journals, and made several presentations at professional associations, seminars, and meetings. He had also produced high quality research work which was widely praised and recognized by his peers.

*Dr. Patel's Performance at LIU*

15. As an Assistant Professor at LIU, Dr. Patel proved himself to be a professional, hard-working, and dedicated member of Defendant's faculty. Specifically, Dr. Patel served on a number of committees, including: (1) the Faculty Review Committee (elected to the Committee by the vote of majority by faculty members); (2) the Curricular Assessment Committee; (3) the Research Committee; (4) the Students Portfolio Committee; (5) the Committee on Committees; and (6) the ExamSoft Taskforce Committee. In addition, Dr. Patel served on the "Steering Committee," of the Generic Pharmaceutical Focus Group of American Association of Pharmaceutical Scientists ("AAPS"). Dr. Patel also served as committee member for M.S. and Ph.D. research program, and served in various college level activities.

16. Dr. Patel taught various courses at professional (Pharm. D) and graduate (M.S. and Ph. D) level courses, and implemented effective teaching methodologies in the classroom. Dr. Patel also served as a Faculty Advisor. In that role, advised seventeen Ph.D and Master Degree students. Dr. Patel also served as the mentor for a student from Brooklyn Tech high school.

17. In addition, Dr. Patel served as a reviewer and subject matter expert for manuscripts which were published in six professional journals, including the *International Journal of Pharmaceutics, European Journal of Pharmaceutical Sciences*, and *Life Sciences*. Dr. Patel also served as an Editorial Board member of the *Journal of Developing Drugs*.

18. In 2013 and 2014, as a member of LIU's faculty, Dr. Patel also made ten presentations at the American Association of Pharmaceutical Scientists ("AAPS"). Dr. Patel's research work from his lab at LIU has been published in high impact, reputed journals. Dr. Patel also established a research laboratory to further advance his changes to obtain tenure, and received support from the Pharmaceutical industry to conduct said research, as a means to further develop the knowledge and skills of students at LIU. Dr. Patel also participated and contributed in University-wide grant writing. For his research, Dr. Patel was the recipient of numerous professional grant awards.

19. In early 2013, after applying for reappointment following the completion of a six month probationary period, Dr. Patel received his first evaluation and review. His application for reappointment was reviewed by a Faculty Review Committee, the Division Director of the Pharmaceutical Sciences Division, and the Dean of the Pharmacy College. In recognition of his outstanding performance, Dr. Patel was unanimously recommended for reappointment.

20. In the Fall of 2013, Dr. Patel again applied for reappointment at LIU. His application for reappointment was again reviewed by a Faculty Review Committee, the Division Director of the Pharmaceutical Sciences Division, and the Dean of the Pharmacy College, Stephen Gross. In light of his tremendous efforts and accomplishments, Dr. Patel was again unanimously recommended for reappointment.

21. In January 2014, Mr. Stephen Gross, Dean of the Pharmacy College, wrote a memorandum to LIU Vice President Jeffrey Kane regarding Dr. Patel. In particular, he wrote that "Dr. Patel has a skill set that is difficult, if not impossible to find in an American trained pharmacist." Dean Gross further praised Dr. Patel's "academic and research achievements," his mastery of industrial pharmacy, and his willingness to cover lectures in subject areas where LIU was not able to find faculty, such as Medicinal Chemistry. Dean Gross concludes the memo by writing "we are hopeful that Dr. Patel can remain with us and go through the promotion and tenure process."

22. In short, over the course of his first few years working at LIU, as his evaluations demonstrate, Dr. Patel had gained the respect and admiration of his students, peers, and supervisors at LIU.

### *Dr. Patel Engages in Protected Activity*

23. In January 2015, Dr. Patel signed a Sworn Affidavit on behalf of one his co-workers in the Department. Specifically, a professor named Supriya Bavadekar, who is also of Indian descent, brought an action in Kings County Supreme Court, which alleged

8

discrimination against LIU, former Dean David Daft, and former Division Director Anthony Cutie.

24. In the Sworn Affidavit, Dr. Patel stated that he believed that two administrators, former Dean David Taft and former Division Director Anthony Cutie, had engaged in unlawful discrimination.

25. Indeed, Dr. Patel specifically stated in his Sworn Affidavit that he believed that he himself was a victim of discrimination on the basis of race, national origin, alienage and citizenship status.

26. The Sworn Affidavit was signed on January 16, 2015, and thereafter served upon counsel for LIU as part of the litigation against the University. Upon its service, Defendant was made aware of Dr. Patel's participation in the discrimination suit on behalf of his colleague. The affidavit also specifically highlighted the role of Dean Stephen Gross as an aider and abettor of discriminatory practices.

### *Defendant Interferes With Dr. Patel's FMLA Leave*

27. In November 2014, Dr. Patel was expecting the arrival of a new baby. In anticipation of the birth of his child, on November 24, 2014, Dr. Patel emailed Dean Gross, and requested permission to take a leave of absence. Dean Gross responded via email, stating that the College would "comply with any rules and regulations regarding paternity leaves."

9

28. On January 13, 2015, following the birth of his child, Dr. Patel followed up regarding his request to take a leave of absence to care for his newborn. Specifically, Dr. Patel informed Defendant that he sought to take a leave of absence commencing on January 26, 2015.

29. Dr. Patel also made clear that during his leave, he would maintain regular communications with his graduate students in order to take care of their research activities, and continue to participate as a committee member for his Masters and Ph.D students. Dr. Patel also made clear that he would always be available via cell phone and email.

30. Thereafter, Dr. Patel received and submitted the necessary FMLA paperwork regarding his leave of absence, which became effective February 2, 2015.

31. In February 2015, while on FMLA leave, Dr. Patel continued to work with the students that he was advising. As such, throughout the month, he went to his office on campus on a few occasions. On one such occasion, Dr. Patel saw Division Director Dr. Rutesh Dave. Dr. Dave told Dr. Patel that "nobody takes this kind of leave." He also warned that Plaintiff's decision to take leave "could affect your future reappointment and tenure." Dr. Dave told Plaintiff, "you just cannot go on leave like that."

32. Following the conversation with Dr. Dave, fearing the loss of his job, Dr. Patel returned from FMLA early, on March 1, 2015.

33. As per his union contract with LIU, Dr. Patel was entitled to receive his salary during his leave of absence. However, LIU failed to provide Dr. Patel with a paycheck, and initially indicated an unwillingness to pay him his salary. After numerous requests in February, March, April, and May, Defendant finally complied with the union contract which required LIU to pay Dr. Patel.

34. Nevertheless, in forcing Dr. Patel to return from his leave of absence early, Defendant "interfered" with his leave, in violation of the FMLA.

*Unlawful Retaliation*

35. In March 2015, Dr. Patel submitted an application for full-time reappointment to faculty, consistent with his "tenure track."

36. Plaintiff's application was reviewed throughout April and May 2015 by the Faculty Review Committee (consisting of 7 faculty members of the pharmaceutical sciences and pharmacy practice division), the Division Director of the Pharmaceutical Sciences Division, and the Dean of the Pharmacy College.

37. Over the course of the summer of 2015, Dr. Patel was not provided with any information regarding his employment status, despite the fact that such decisions

11

regarding tenure are made in May of each year. Dr. Patel knows when such decisions are made, because he served as a member of the Faculty Review Committee in multiple years.

38. In August 2015, Dr. Patel received a letter from Jeffrey Kane, Vice President of Academic Affairs, informing him that he would not be reappointed, and that his employment at LIU would therefore terminate on August 31, 2016. The letter did not state why Plaintiff's application for tenure was denied, or why his employment was being terminated.

39. In the Fall of 2015, Dr. Patel made several requests to see his personnel file, so he could review the official decisions regarding his non-reappointment.

40. In January 2016, after numerous requests, Dr. Patel was finally given access to his files. As he expected, all of the evaluation forms and recommendations regarding tenure were dated eight months earlier, in May 2015.

41. In recognition of Dr. Patel's contributions in teaching, service and scholarship work, the Faculty Review Committee voted that Dr. Patel be reappointed.

42. However, Dr. Dave, as Division Director, recommended that Dr. Patel not be reappointed. Significantly, Dr. Dave noted that Plaintiff's FMLA leave of absence was a "major concern," due to his alleged "failure to provide proper notice as to the

dates of his leave." Plaintiff, however, sent multiple emails regarding his leave as early as November 2014. Notably, it was Dr. Dave who told Dr. Patel while he was on his FMLA leave that his decision to take leave "could affect tenure and future appointment," and who pressured him to return from his FMLA leave early.

43. Dean Stephen Gross also recommended that Dr. Patel not be re-appointed. Notably, Dr. Patel complained about Dr. Gross in the Sworn Affidavit that he submitted on behalf of his colleague in the discrimination suit against LIU a few months prior.

44. The non-recommendations for reappointment were issued by Dean Gross and Dr. Dave in May 2015.

45. In 2015, 11 other faculty members submitted applications for reappointment. Unlike Dr. Patel, none of the other 11 faculty members who submitted applications for reappointment had taken a leave of absence pursuant to FMLA. In addition, unlike Dr. Patel, none of the other 11 faculty members who submitted applications for reappointment complained of discrimination or participated in a discrimination lawsuit against LIU.

46. Of the 11 faculty members, Dr. Patel was the *only* individual who had his application for reappointment denied. This is despite the fact that Dr. Patel's professional achievements, contributions and accolades were as good, if not better than every other faculty member in his department who received re-appointment.

47. During the 2015-16 school year, Plaintiff worked knowing that he was going to be terminated at the conclusion of the year. This caused Dr. Patel to suffer significant stress, anxiety, and even depression.

48. On August 31, 2016, Dr. Patel was officially terminated from employment by Defendant.

### FIRST CAUSE OF ACTION
### RETALIATION – TITLE VII

49. Based on the foregoing, in denying Plaintiff reappointment and eventually terminating his employment based on his good faith opposition to discriminatory practices, Defendant violated Title VII (42 U.S.C. §§ 2000e et seq.)

### SECOND CAUSE OF ACTION
### RETALIATION – NYSHRL

50. Based on the foregoing, in denying Plaintiff reappointment and eventually terminating his employment based on his good faith opposition to discriminatory practices, Defendant violated New York State Human Rights Law (N.Y. Exec. Law § 290 et seq.)

### THIRD CAUSE OF ACTION
### RETALIATION – NYCHRL

51. Based on the foregoing, in denying Plaintiff reappointment and eventually terminating his employment based on his good faith opposition to discriminatory

practices, Defendant violated Title 8 of the N.Y.C. Administrative Code (N.Y. City Admin Code § 8-101 et seq.)

## FOURTH CAUSE OF ACTION
## RETALIATION – FMLA

52. Based on the foregoing, in denying Plaintiff reappointment and eventually terminating his employment because he exercised his rights and took a leave of absence under the Family Medical Leave Act ("FMLA"), Defendants willfully discriminated and retaliated against Plaintiff, in violation of 29 U.S.C. § 2601 et seq.

## FIFTH CAUSE OF ACTION
## INTERFERENCE – FMLA

53. Based on the foregoing, in discouraging Plaintiff from continuing his leave of absence, and pressuring Plaintiff to return from FMLA leave prematurely, Defendants unlawfully and willfully impeded and interfered with Plaintiff exercising his rights under the FMLA, in violation of 29 U.S.C. § 2601 et seq.

## CLAIMS FOR RELIEF

**WHEREFORE,** the Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, injunctive relief, liquidated damages, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the Court grant the Plaintiff any other relief to which he is entitled, including but not limited to:

15

1.  Awarding reasonable attorney's fees and costs and disbursements of this action;

2.  Granting such other and further relief that to the Court seems just and proper.

*Further*, Plaintiff demands a trial by jury.

Dated: Uniondale, New York
April 10, 2017

                         **TILTON BELDNER LLP**
                         626 RXR Plaza
                         Uniondale, NY 11556
                         P: (516) 262-3602
                         F: (516) 324-3170

                         _____
                         Joshua Beldner

## VERIFICATION

STATE OF PENNSYLVANIA  )
                       ) ss.:
COUNTY OF Montgomery   )

SARSVATKUMAR PATEL, being duly sworn, states that he has reviewed the foregoing COMPLAINT, and that the contents of said document are true to his own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, he believes them to be true.

_____
SARSVATKUMAR PATEL

Duly sworn to before me this
7th day of April, 2017

_____
NOTARY PUBLIC

State of Pennsylvania
County of Montgomery

Subscribed and sworn to (or affirmed) before me on this 7th day of APRIL, 2017 by Sarsvatkumr Patel
Notary Name: Cesar Molina
Notary Signature: _____
My commission expires on 2-25-2018

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CESAR MOLINA, NOTARY PUBLIC
PLYMOUTH TWP, MONTGOMERY COUNTY
MY COMMISSION EXPIRES FEB. 25, 2018

# EXHIBIT A

| EEOC Form 161 (11/16) | **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** |
|---|---|

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Sarsvatkumar Patel<br>4 Ronald Drive, Apt 107<br>Colonia, NJ 07067 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2016-01975 | Debra L. Richards,<br>Investigator | (212) 336-3768 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Kevin J. Berry,
District Director

FEB 2 1 2017
*(Date Mailed)*

Enclosures(s)

cc: Attn: Director of Human Resources
LONG ISLAND UNIVERSITY
1 University Plaza
Brooklyn, NY 11201

Joshua Bledner
TILTON BELDNER LLP
626 RXR Plaza
Uniondale, NY 11556