UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                         :

SARSVATKUMAR PATEL,           :

                      :

        Plaintiff,         :   Civil Action No. 17-cv-02170 (NGG)(JO)

                      :

        -against-         :

                      :

LONG ISLAND UNIVERSITY,    :

                      :

        Defendant.       :

                      :

------------------------------------------------------- x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Clifton Budd & DeMaria, LLP
The Empire State Building
350 Fifth Avenue, 61st Floor
New York, NY 10118
(212) 687-7410
Fax: (212) 687-3285
dpcatalano@cbdm.com
srmunsky@cbdm.com

*Counsel*:
Douglas P. Catalano, Esq.
Stefanie R. Munsky, Esq.

*Service Date:*
November 15, 2018

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

    I.      LIU AND ITS POLICIES................................................................................2

    II.     LIU'S COLLEGE OF PHARMACY AND THE REAPPOINTMENT
           PROCESS ...........................................................................................2

    III.    PLAINTIFF'S EMPLOYMENT AT LIU .............................................................4

        A.    Plaintiff's Initial Appointment..............................................................4

        B.    Plaintiff's Delayed Return for His Second Semester of Teaching ..........................4

        C.    LIU Grants Plaintiff's Applications For First and Second Reappointments ...........5

    IV.    PLAINTIFF'S FMLA LEAVE ........................................................................5

    V.     THE BAVADEKAR ACTION ........................................................................7

    VI.    LIU DENIES PLAINTIFF'S APPLICATION FOR A THIRD
           REAPPOINTMENT.....................................................................................7

        A.    Dave's Recommendation...................................................................7

        B.    The Recommendations of the FRC and Gross ..........................................9

        C.    Notice to Plaintiff of Non-Reappointment .............................................10

        D.    Reappointment of Other Faculty Members During Spring 2015 .........................11

    VII.   PLAINTIFF'S COMPLAINT ........................................................................11

ARGUMENT .......................................................................................................................12

POINT ONE .......................................................................................................................13

LIU DID NOT RETALIATE AGAINST PLAINTIFF FOR AUTHORING THE
AFFIDAVIT IN THE BAVADEKAR ACTION .............................................................................13

        A.    Plaintiff's Retaliation Claim Under Title VII and NYSHRL Should Be
             Dismissed...................................................................................13

        B.    Plaintiff's NYCHRL Retaliation Claim Should Also Be Dismissed ....................19

POINT TWO .......................................................................................................................20

LIU DID NOT RETALIATE AGAINST PLAINTIFF FOR TAKING LEAVE
UNDER THE FMLA ............................................................................................................20

POINT THREE ....................................................................................................................23

LIU DID NOT INTERFERE WITH PLAINTIFF'S RIGHTS UNDER THE FMLA .........................23

CONCLUSION ....................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Alexander v. Board of Educ. Of City School Dist. Of the City of New York*,
   107 F.Supp.3d 323 (S.D.N.Y. 2015) ........................................................... 19

*Bowen-Hooks v. City of New York*,
   13 F.Supp.3d 179 (E.D.N.Y. 2014) ............................................................ 18

*Brown v. Eli Lilly and Co.*,
   654 F.3d 347 (2d Cir. 2011) ....................................................................... 12

*Chansamone v. IBEW Local 97*,
   523 Fed.Appx. 820 (2d Cir. 2013) .............................................................. 15

*Chen v. City Univ. of N.Y.*,
   805 F.3d 59 (2d Cir. 2015) ......................................................................... 18

*Clark Cty. Sch. Dist. v. Breeden*,
   532 U.S. 268 (2001) ................................................................................... 15

*Clemens v. Moody's Analytics, Inc.*,
   2018 WL 1750586 ....................................................................................... 21

*Cunningham v. Con. Ed.*,
   2006 WL 842914 (E.D.N.Y. 2006) ............................................................. 15

*Dall v. St. Catherine of Siena Medical Center*,
   966 F.Supp.2d 167 (E.D.N.Y. 2013) .......................................................... 17

*Delgado v. Triborough Bridge and Tunnel Authority*,
   485 F.Supp.2d 453 (S.D.N.Y. 2007) .......................................................... 14

*E.E.O.C. v. Town of Huntington*,
   2008 WL 361136 (E.D.N.Y. 2008) ............................................................. 21

*Ehrbar v. Forest Hills Hospital*,
   131 F.Supp.3d 5 (E.D.N.Y. 2015) ........................................................ 15, 17

*Esar v. JP Morgan Chase Bank N.A.*,
   2018 WL 2075421 (E.D.N.Y. May 3, 2018) ........................................... 18, 22

*Facey v. Equinox Holding, Inc.*,
   2013 WL 153696 (E.D.N.Y. 2013) ............................................................. 18

*Fanelli v. New York*,
  200 F.Supp.3d 363 (E.D.N.Y. 2016)......................................................................... 12

*Faro v. New York University*,
  502 F.2d 1229 (2d Cir. 1974) .................................................................................... 17

*Fernandez v. Woodhull Medical and Mental Health Center*,
  2017 WL 3432037 (E.D.N.Y. 2017) ......................................................................... 23

*Fleming v. MaxMara USA, Inc.*,
  644 F.Supp. 2d 247 (E.D.N.Y. 2009) ....................................................................... 17

*Fraser v. MTA Long Island Rail Road*,
  307 F.Supp.3d 105 (E.D.N.Y. 2018)........................................................... 12, 13, 14, 15

*Genao v. Avon Salon & Spa*,
  2008 WL 190605 (S.D.N.Y. 2008) ............................................................................ 16

*Gilford v. City of New York*,
  2004 WL 1574695 (S.D.N.Y. 2004) .......................................................................... 15

*Graziadio v. Culinary Inst. of America*,
  817 F.3d 415 (2d Cir. 2016) ...................................................................................... 23

*Gregory v. Daly*,
  243 F.3d 687 (2d Cir.2001) ....................................................................................... 21

*Hill v. New York City Housing Authority*,
  220 F.Supp.3d 499 (S.D.N.Y. 2016) ......................................................................... 21

*Hollander v. American Cyanamid Co.*,
  895 F.2d 80 (2d Cir. 1990) ........................................................................................ 15

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015) ...................................................................................... 12

*McGuiness v. East West Industries*,
  857 F.Supp.2d 259 (E.D.N.Y. 2012).................................................................... 19, 21

*Pace Coll. v. Commission on Human Rights*,
  38 NY2d 28, 377 N.Y.S.2d 471 (N.Y. 1975)............................................................ 17

*Potenza v. City of N.Y.*,
  365 F.3d 165 (2d Cir. 2004) ...................................................................................... 19

*Reilly v. Revlon, Inc.*,
   620 F. Supp. 2d 524, 2009 WL 1391258 (S.D.N.Y. 2009) ..............................................21, 23

*Rinaldi v. Quality King Distributors, Inc.*,
   29 F.Supp.3d 218 (E.D.N.Y. 2014) ....................................................................21, 22, 23

*Rivera v. New York City Department of Correction*,
   951 F.Supp.2d 391 (E.D.N.Y. 2013) ...........................................................................13, 14

*Rosenberg v. Chesapeake Pharmaceutical and Health Care Packaging*,
   888 F.Supp.2d 302 (E.D.N.Y. 2012) ..................................................................................16

*Russo v. New York Presbyterian Hosp.*,
   972 F.Supp.2d 429 (E.D.N.Y. 2013) ..................................................................................18

*Serby v. New York City Dept. of Educ.*,
   526 Fed. Appx 132 (2d Cir. 2013) ......................................................................................22

*Skates v. Incorporated Village of Freeport*,
   265 F.Supp.3d 222 (E.D.N.Y. 2017) ..................................................................................22

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) ............................................................................................................13

*Williams v. R.H. Donnelley, Corp.*,
   368 F.3d 123 (2d Cir. 2004) ...............................................................................................12

*Zann Kwan v. Andalex Group LLC*,
   737 F.3d 834 (2d Cir. 2013) ..................................................................................12, 13, 15

## **Statutes**

29 U.S.C. §2615(a)(1) ..............................................................................................................22
29 U.S.C. §§2617(c)(1)-(2) ......................................................................................................22
42 U.S.C. §2000e-3(a) ..............................................................................................................14
42 USCS §§ 2000e-2000e-17 ...................................................................................................14

## **Regulations**

29 C.F.R. 825.302(a) ................................................................................................................19
29 C.F.R. §825.220(b) ..............................................................................................................22

## PRELIMINARY STATEMENT

Long Island University ("LIU") submits this memorandum of law in support of its summary judgment motion seeking dismissal of Sarsvatkumar Patel's ("Plaintiff") Complaint as there are no genuine issues of material fact to be tried. Plaintiff, a former LIU Pharmacy College faculty member, alleges that LIU failed to reappoint him in retaliation for authoring an affidavit in support of another employee's lawsuit against LIU in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), as well as for taking leave under the Family and Medical Leave Act ("FMLA"). Plaintiff also claims LIU interfered with his FMLA rights.

Plaintiff's claims should be dismissed as a matter of law as LIU had legitimate, non-retaliatory reasons for not reappointing Plaintiff as he did not maintain the necessary credentials to continue on his path to tenure, a lifetime appointment. Plaintiff's reappointment was subject to a multi-level review process, resulting in the academic judgment that Plaintiff was not deserving of reappointment due to the quality of his teaching and deficient scholarship, including a lack of peer reviewed publications and accepted grants. Plaintiff has failed to provide any evidence that his non-reappointment would not have occurred in the absence of a retaliatory motive.

Any claim that LIU interfered with Plaintiff's FMLA leave should be dismissed as time-barred under the FMLA's two-year statute of limitations. If deemed timely, Plaintiff also fails to establish that LIU denied him FMLA leave or interfered with his FMLA rights. For the reasons set forth herein, the Court should grant LIU's motion and dismiss Plaintiff's Complaint.

**STATEMENT OF FACTS**

I.      **LIU AND ITS POLICIES**

LIU is a university with programs in New York, overseas, and online, including at one of its main campuses, LIU Brooklyn. 56.1, ¶2.[1] LIU maintains an Anti-Harassment/Discrimination Policy that prohibits discrimination and harassment based upon protected characteristics and retaliation for reporting complaints of discrimination, as well as contains a reporting procedure. 56.1, ¶¶3-5. LIU also has a FMLA Policy that allows employees to take leave for qualifying reasons, such as to care for a newborn.  56.1, ¶¶6-7. The policy contains a procedure for requesting leave: "Employees must timely inform both their supervisor and Human Resources, through Benefits Administration, that they need family or medical leave and how long they expect to be absent." Human Resources ("HR") will provide a request form which should be returned "at least 30 days in advance for foreseeable leaves..." 56.1, ¶¶8-10.

II.     **LIU'S COLLEGE OF PHARMACY AND THE REAPPOINTMENT PROCESS**

One of the colleges at LIU Brooklyn is the Arnold & Marie Schwartz College of Pharmacy and Health Sciences (the "College"). 56.1, ¶11. It is comprised of two Divisions: Pharmaceutical Sciences and Pharmacy Practice. 56.1, ¶12.  Pharmaceutical Sciences involves basic science, chemistry and biology as applied to pharmacy. Pharmaceutical Practice provides students with clinical experience. 56.1, ¶¶13-14.

Each Division is administered by a Division Director, who report to the Dean of the College. 56.1, ¶17. The Dean reports to LIU's Vice President for Academic Affairs ("VPAA"), who was Dr. Jeffrey Kane ("Kane") during Plaintiff's employment at LIU. 56.1, ¶¶18-19.  Anthony Cutie ("Cutie")

---

[1]      References are to LIU's 56.1 Statement.

was the Pharmaceutical Sciences Division Director until December 31, 2013, followed by Rutesh Dave ("Dave"). 56.1, ¶¶20-21.  David Taft ("Taft") was Dean until August 2013, followed by Stephen Gross ("Gross"). 56.1, ¶22.

The Arnold & Marie Schwartz College of Pharmacy and Health Sciences, Long Island University Chapter of the American Association of University Professors (the "Union") represents the regular, full-time faculty of the College. 56.1, ¶24.  As such, the employees' terms and conditions of employment are subject to the collective bargaining agreement between the Board of Trustees of LIU and the Union (the "CBA"). 56.1, ¶25.

Faculty at the College are placed on either a tenure or non-tenure track upon initial appointment. 56.1, ¶26. Tenure track faculty are probationary employees prior to applying for tenure and must apply for reappointment on an annual basis in accordance with a schedule in the CBA. They are able to apply for tenure after their sixth year, which, if granted, is a lifetime appointment. 56.1, ¶¶27-29.

Tenure-track faculty apply for reappointment by submitting reappointment files, which include information concerning their professional experience, educational background, specialties, instructional effectiveness, teaching, service responsibilities, professional affiliations and scholarly accomplishments. 56.1, ¶¶31-32. The review of a faculty member's reappointment application is conducted at three levels: (1) the Division Director; (2) Faculty Review Committee ("FRC"), a committee comprised of faculty peers within the College; and (3) the Dean. 56.1, ¶¶33-40. Each level reviews the faculty member's reappointment file, which includes their application, student and peer evaluations and personnel file, and then make recommendations. All levels review the same information at the time of application to ensure fairness. *Id*.

3

Finally, the VPAA reviews the reappointment file and recommendations from the Dean, Division Director and FRC. If the faculty member is not being reappointed, the VPAA sends notice of termination to take effect August 31 of the year following the year in which notice was given. 56.1, ¶¶39-40.

The CBA sets forth the criteria that may be considered when evaluating an application for reappointment: teaching, scholarship and service. 56.1, ¶41. Teaching is evaluated by peer and student evaluations, curricular development, teaching awards and honors. 56.1, ¶42. Scholarship is evaluated by research, publications and grant activity, quality and quantity of publications, such as in discipline appropriate journals, and direct engagement in the development of their discipline. 56.1, ¶43. Service is measured by contributions to LIU (other than teaching and research), such as committee participation and advisory services to students. 56.1, ¶44.

## III.  PLAINTIFF'S EMPLOYMENT AT LIU

### A.  Plaintiff's Initial Appointment

Plaintiff commenced employment on September 1, 2012 as a probationary Assistant Professor in the College's Pharmaceutical Sciences Division on a tenure track. 56.1, ¶¶48-51. LIU filed a H-1B application on Plaintiff's behalf so that he would be authorized to work. 56.1, ¶52.  LIU's counsel notified Plaintiff on July 30, 2012 that his petition was approved and advised: "[w]hen you next leave the U.S. after September 1, 2012, you and your wife will need to obtain H-1B and H-4 visas in your passports in order to be able to re-enter the U.S..." and "[s]ome applications require additional administrative processing that may take weeks or months to complete." 56.1, ¶53.

### B.  Plaintiff's Delayed Return for His Second Semester of Teaching

Although on notice that it could take weeks or months to obtain a visa, Plaintiff went to India during the winter break. 56.1, ¶55. On January 4, 2013, Plaintiff informed Cutie that there were issues

with his visa and he would not be cleared to return for 3-4 weeks after the start of the semester on

January 22. 56.1, ¶56. Two weeks later, Plaintiff advised Cutie that his visa was still under review,

despite previously assuring Cutie that there would be no issues.  56.1, ¶¶55-59.

On February 7, 2013, Plaintiff finally returned. 56.1, ¶61. Plaintiff met with Taft who then

formalized his concerns on February 14, 2013 ("Taft Memo"), specifically addressing his

disappointment with Plaintiff's decision to travel when faculty are expected to be on campus preparing

for the next semester, including by attending faculty development meetings, and Plaintiff's lack of

communication concerning his return. 56.1, ¶¶62-63.

### C.    LIU Grants Plaintiff's Applications For First and Second Reappointments

Pursuant to the CBA, LIU evaluated Plaintiff's first reappointment application after only one

semester of teaching. 56.1, ¶64. Despite the series of events, Cutie, the FRC and Taft recommended

reappointment, yet noted in their recommendations the need for Plaintiff to improve his teaching based

on student evaluations, which was also verbally discussed with Plaintiff. 56.1, ¶¶65-67. Taft also noted

the need to "create a sustained record of scholarly achievement." 56.1, ¶68.  Several months later,

Cutie, the FRC and Taft recommended Plaintiff's second reappointment, with Taft noting a need for

improvement in teaching. 56.1, ¶69.

## IV.    PLAINTIFF'S FMLA LEAVE

On November 24, 2014, Plaintiff informed Gross by e-mail that he and his wife were expecting

a baby "in the near future" and sought permission for an unspecified leave. 56.1, ¶70. Gross inquired

when the birth was expected to take place and how long the leave would last, noting "[t]he College will

of course comply with any rules and regulations regarding paternity leaves."  56.1, ¶¶71-72.  Dave

replied: "Congratulations and if you finalize your possible leave of absence with HR, please let me

know the exact dates of your absence so that I can have backup plan ready for this semester and next depending on your situation. Keep us all in the loop." 56.1, ¶73.

      Plaintiff did not respond to the overtures of Gross and Dave by providing the anticipated dates and duration of leave. 56.1, ¶74.  Plaintiff's child was born on January 1, 2015. 56.1, ¶75.  On January 13, 2015, twelve days later, Plaintiff wrote to Gross and Dave indicating: "I would like to know the procedure for leave of absence to take care of my family and newborn." 56.1, ¶76. Dave responded:

> While we await a response from Maria [HR], I am a little surprised that you did not followup (sic) on our emails below dated November 25th. I have no problem about the leave and as Dean Gross mentioned "The college will comply with all the requirements". My concern is that do you have approximate date when you plan to take this leave? School starts next Tuesday so I need to know approximately how many days/weeks do you plan to take the leave? This will help me change the workload immediately so student learning is not affected.

56.1, ¶77.  Two days later, on January 15, 2015, Plaintiff wrote to HR to initiate taking FMLA leave. 56.1, ¶78. On January 17, 2015, Plaintiff wrote to Dave indicting that he contacted HR, he was awaiting FMLA paperwork and that he wanted to start his leave on January 26, 2015. 56.1, ¶79.

      On January 22, 2015, Dave and Gross met with Plaintiff to discuss his leave request and "to have a better plan of when is the start date and when is the return date." 56.1, ¶80. Despite Plaintiff's failure to provide thirty days' notice of his need for foreseeable leave pursuant to LIU's policy, it was agreed that Plaintiff's leave would begin February 2 and that Plaintiff would complete the required FMLA paperwork. 56.1, ¶81.  Plaintiff did not submit the FMLA paperwork until April 27, 2015, <u>after</u> his return from leave. 56.1, ¶82. Thus, at the time LIU granted Plaintiff's FMLA leave, LIU did not know Plaintiff's anticipated return date. 56.1, ¶83. This uncertainty made it difficult to plan for coverage of Plaintiff's courses. Dave Aff., ¶31.[2]

---

[2] References are to the Affidavit of Dr. Rutesh Dave, dated November 15, 2018.

On March 1, 2015, Plaintiff made a request to return to work immediately, which was granted despite Plaintiff's lack of notice. 56.1, ¶¶84-85. On May 14, 2015, Plaintiff wrote to HR to confirm that he submitted the required FMLA paperwork and advised that he "may need to utilize remaining FMLA leave to take care of my new baby." 56.1, ¶86.

## V.   THE BAVADEKAR ACTION

In January 2015, Plaintiff contends that he authored an affidavit (the "Affidavit") in support of a lawsuit filed by a former faculty member, Supriya Bavadekar, against LIU ("Bavadekar Action"). 56.1, ¶87.  The Affidavit details Plaintiff's difficulties in returning to the U.S. in January 2013 and takes exception to the Taft Memo. 56.1, ¶88. Plaintiff alleges in the Affidavit that Taft and Cutie discriminated against him based on his race, national origin and citizenship status without providing any facts to support this belief in the Affidavit or in this action. 56.1, ¶89.

## VI.   LIU DENIES PLAINTIFF'S APPLICATION FOR A THIRD REAPPOINTMENT
### A.   Dave's Recommendation

On or about March 9, 2015, Plaintiff applied for his third reappointment. 56.1, ¶95.  On May 7, 2015, Dave recommended against reappointment, noting concerns related to teaching, such as failing to properly guide students when he was the course coordinator. Dave also noted Plaintiff's deficient scholarship based on his lack of peer reviewed publications and accepted grants. Concerning service, Dave advised Plaintiff to take more of a leadership role within the College. 56.1, ¶96.  Dave concluded:

> I am recommending non-reappointment for the following reasons. First, even with a non-reappointment recommendation, Dr. Patel has another year of appointment and he will be reevaluated next year. His teaching evaluations and reviews are modestly good but far from excellent. His scholarship, prior to joining the college was good and although he has been active in supervising graduate students none of his scholarly pursuits have led to publication or securing of grants, which he has attempted.

> His service on committees is acceptable. A major concern was the
> approach he took of securing his leave. He failed to provide proper
> notice to the dean and division director as to the dates of his absence.
> This review, therefore serves to provide Dr. Patel that he is on notice
> for non-renewal next year.

56.1, ¶97. Prior to issuing this recommendation, Dave reviewed Plaintiff's reappointment application,

student and peer evaluations from the year prior and his personnel file. 56.1, ¶98. Dave also consulted

with Gross. 56.1, ¶99.

With respect to Plaintiff's teaching, Dave considered it to be somewhere in between acceptable

and unacceptable. 56.1, ¶100. Dave considered a 3.2 and below on a student evaluation to be

unacceptable. 56.1, ¶102. The student evaluations for Plaintiff as an instructor in Spring and Fall 2014

bordered on unacceptable as they were in the range of 3.27 to 3.36 out of 4, with one small graduate

class evaluating Plaintiff at a 3.76. 56.1, ¶101. Although Plaintiff's student evaluations had some

neutral to positive comments, the evaluations also revealed some negative student comments, such as

"[t]he professor does not appear to have enough knowledge about this topic," "[t]eacher has to improve

communication skills as well as teaching skills," and "I have never met a more disinterested professor

in my whole experiences." 56.1, ¶103.

Dave had other concerns about Plaintiff's teaching, such as leaving students alone in a

laboratory without faculty supervision. Dave Aff., ¶39. On February 21, 2014, Dave placed Plaintiff on

notice of this issue as Dave personally witnessed Plaintiff not in the laboratory. 56.1, ¶104. This was

part of Plaintiff's job and his absence could jeopardize the safety of the students working with

chemicals. 56.1, ¶¶104-105. Plaintiff also sent a December 11, 2014 e-mail to students blaming his

poor teaching on his lack of expertise: "As you may be aware that my specialization (major) is in

Pharmaceutics and I took opportunity to learn and deliver the Medicinal Chemistry…I am also learning

while teaching the course…". 56.1, ¶107; Dave Aff., ¶40.

Dave believed that Plaintiff's service to LIU was "adequate," but deemed Plaintiff's scholarship by his third year as "not acceptable." 56.1, ¶¶108-109. Unlike many faculty, Plaintiff was provided with a fully functioning laboratory for research at the beginning of his tenure, which should have led to publications and grants. Dave Aff., ¶41. By the time Plaintiff applied for his third reappointment, he had not been published in a peer-reviewed journal while at LIU nor awarded any grants. 56.1, ¶110-111.

Prior to issuance of Dave's recommendation, on May 6, 2015, a draft was provided to Kane. 56.1, ¶113.  Kane expressed a concern about the reference in Dave's recommendation to Plaintiff's lack of communication concerning his leave request. 56.1, ¶114. Kane believed that this did not pertain to the criteria for reappointment in the CBA: service, scholarship and teaching.  56.1, ¶115.  As discussed below, Kane thereafter engaged in an independent review of Plaintiff's application using these three criteria. 56.1, ¶116.  Kane reached the same conclusion as Dave and Gross and confirmed in his testimony that Plaintiff's FMLA leave played no role in his decision not to reappoint Plaintiff. 56.1, ¶¶116-117, 129.

## B.    The Recommendations of the FRC and Gross

On May 14, 2015, the FRC recommended reappointment, yet noted certain deficiencies in Plaintiff's teaching and "concern[] about the pace of scholarship demonstrated by Dr. Patel so far…" 56.1, ¶118. The FRC recommended that Plaintiff improve his communication with LIU. Finally, the FRC concluded that Plaintiff's service was "acceptable." 56.1, ¶¶118-121.

After considering the recommendations from Dave and FRC, on May 28, 2015, Gross recommended against reappointment:

> The FRC recommends reappointment; while the Division Director
> does not. Now in his third year, this review should be pointed towards a
> tenure recommendation. I don't believe that his current activities in

9

teaching, scholarship, and service are strong enough to grant a lifetime
tenure appointment.

With this non-reappointment recommendation, Dr. Patel does have
another opportunity for a positive review next year.

56.1, ¶122.

C.    **Notice to Plaintiff of Non-Reappointment**

Kane made LIU's final determination and advised Plaintiff of his non-reappointment on

August 28, 2015, resulting in his termination on August 31, 2016. 56.1, ¶¶123-124. Prior to making this

decision, Kane reviewed Plaintiff's reappointment application, personnel file, peer and student

evaluations and the recommendations from the Dean, FRC and Division Director, as well as met with

the FRC. 56.1, ¶125-126.

In denying reappointment, the criteria Kane used to evaluate Plaintiff's application were

"teaching, scholarship, and service." 56.1, ¶¶127-128.  Kane described Plaintiff's teaching as

"mediocre." 56.1, ¶130.  Kane believed that Plaintiff's "scholarly productivity was rather low" as he

had no peer-reviewed publications at the time of his application, only poster presentations, which Kane

did not place much weight on as "they are very easy to do and they don't necessarily represent properly

peer review[ed] scholarship." 56.1, ¶¶131-132.  Kane further testified that:

> I would say that reappointment means that one has achieved a level of
> professional development, has risen to a level of professional
> development that warrants reappointment. Someone can be good but
> not good enough. So I thought he had made progress in his scholarship.
> I thought his teaching, I wouldn't say it was unsatisfactory but it was
> rather mediocre and his service, I thought was again, mediocre, so I
> don't think that the university needs mediocre faculty. Our faculty are
> expert teachers and engage the colleagues. I didn't think he made those
> criteria.

56.1, ¶133.

Plaintiff ceased working for LIU on August 31, 2016, one year after notice of his non-reappointment. 56.1, ¶142. During that year, LIU received complaints from students concerning his teaching. 56.1, ¶¶139-141. Plaintiff did not apply for reappointment prior to his last day, even though he was advised of his right to do so by both Dave and Gross in their May 2015 recommendations, which Plaintiff admits to viewing in January 2016. 56.1, ¶¶143-145.  He also never filed a grievance with his Union concerning his non-reappointment. 56.1, ¶146.

### D.    Reappointment of Other Faculty Members During Spring 2015

In Spring 2015, Pharmaceutical Sciences reappointed two faculty: Dovenia Ponnoth ("Ponnoth") and Jun Yen-Yeh ("Yen-Yeh"). 56.1, ¶134.  This was Ponnoth's first reappointment. 56.1, ¶135.  Although Yen-Yeh was granted a third reappointment, his scholarship was notably stronger than Plaintiff's in that he ███████████████████████████. 56.1, ¶¶136-137. LIU ultimately denied Yen-Yeh's application for a fourth reappointment.  56.1, ¶138.

## VII.   PLAINTIFF'S COMPLAINT

Plaintiff commenced this action on April 10, 2017 after dismissal of his EEOC Charge. Munsky Aff., Ex. A.; 56.1, ¶147.  In the Complaint, Plaintiff alleges that LIU failed to reappoint him in retaliation for his authoring the Affidavit. Plaintiff testified that the basis for this belief is: "I was the only person who got terminated. All other eleven faculty members got reappointment. I was the only person who participated or filed an affidavit in support of Supriya Bavadekar against the Long Island University that has reference of Dean Gross who has also evaluated my case." Pl. 104:19-105:6. Plaintiff also alleges that Gross told the FRC Chair, Bhupendra Shah ("Shah") that "because I (Plaintiff) protested against the discriminatory practices, Dean Gross and Dr. Dave at that time not considering my reappointment." Pl. 110:7-112:13. This alleged remark was purportedly reported by Shah to Plaintiff and was not witnessed by Plaintiff.

Although Plaintiff claims that LIU had notice of the Affidavit through service upon LIU's counsel, he admits that no one at LIU told Plaintiff that they were aware of the Affidavit. 56.1, ¶90-91. Dave, Gross and Kane testified either that they were not aware of Plaintiff's Affidavit or did not recall seeing the Affidavit. 56.1, ¶92.  Dave acknowledged that he was made aware of Plaintiff's involvement related to the Bavadekar Action, but clarified that he had no knowledge concerning the actual details of Plaintiff's involvement.  56.1, ¶¶93-94.

Plaintiff also alleges in the Complaint that LIU retaliated against him for taking FMLA leave and interfered with his FMLA rights. Munsky Aff., Ex. A.  To support these claims, Plaintiff contends that Dave referenced his FMLA leave in the May 7 recommendation and that while on FMLA leave, "on one occasion when I went to the college, Dr. Dave told me that nobody takes this kind of leave, you cannot go just like this. This could affect your future reappointment and tenure." Complaint, ¶¶52-53; Pl. 120:22-121:9. Plaintiff claims that he felt "compelled" to return to work based on this alleged remark, which Dave denies making.  Pl. 124:13-125:12. Pl. 124:13-21; Dave 66:10-68:7.  Dave also denies that Plaintiff's FMLA leave was a factor in his recommendation. 56.1, ¶112.

## ARGUMENT

Summary judgment is appropriate where the movant demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. R.H. Donnelley, Corp*., 368 F.3d 123, 126 (2d Cir. 2004). To defeat summary judgment, "[t]he opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact" and "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Brown v. Eli Lilly and Co*., 654 F.3d 347, 358 (2d Cir. 2011).  "When no rational jury could find in favor of the nonmoving part because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Fanelli v.*

*New York*, 200 F.Supp.3d 363, 370 (E.D.N.Y. 2016)(citation omitted). As set forth below, Plaintiff cannot meet his burden, requiring dismissal of the Complaint.

## POINT ONE
## LIU DID NOT RETALIATE AGAINST PLAINTIFF FOR AUTHORING THE AFFIDAVIT IN THE BAVADEKAR ACTION

In the Complaint, Plaintiff alleges that LIU denied his application for a third reappointment in retaliation for his authoring the Affidavit in the Bavadekar Action in violation of Title VII, NYSHRL and NYCHRL.  As set forth herein, Plaintiff fails to establish a claim of retaliation as a matter of law.

### A.      Plaintiff's Retaliation Claim Under Title VII and NYSHRL Should Be Dismissed

Claims under Title VII and NYSHRL are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015).  First, Plaintiff must establish a *prima facie* case of retaliation by demonstrating: (1) participation in a protected activity; (2) LIU's knowledge of the protected activity; (3) that Plaintiff suffered an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.  *Fraser v. MTA Long Island Rail Road*, 307 F.Supp.3d 105, 114 (E.D.N.Y. 2018)(citing *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013)).

If Plaintiff can establish a *prima facie* case of retaliation, the burden shifts to LIU "to articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan*, 737 F.3d at 845.  If LIU meets this burden, "the presumption of retaliation arising from the establishment of the prima facie case drops from the picture," and Plaintiff "must then 'point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.'"  *Fraser*, 307 F.Supp.3d at 114 (citations omitted).  Plaintiff must also demonstrate "that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)).  "This causation standard 'does

not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive.'" *Id.* at 115 (citing *Zann Kwan*, 737 F.3d at 846).

1.   <u>Plaintiff Fails to Establish a *Prima Facie* Case of Retaliation</u>

Plaintiff's retaliation claim fails as he cannot establish a *prima facie* case.  "To establish the first element of his prima facie retaliation claim, a plaintiff need only prove that his complaint 'was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful,' not that the underlying complaint had merit." *Rivera v. New York City Department of Correction*, 951 F.Supp.2d 391, 397-398 (E.D.N.Y. 2013)(citations omitted).  "Mere subjective good faith belief is insufficient; the belief must be reasonable and characterized by objective good faith." *Id.* at 398 (citations omitted).

Here, the submission of Plaintiff's Affidavit was not based on a good faith, reasonable belief that LIU, Cutie, Taft and Gross engaged in unlawful discrimination. Plaintiff was on notice in July 2012 that it could take weeks or months to obtain a visa in India if he left the country.  The Taft Memo merely noted Plaintiff's failure to properly judge the risk of his leaving the country and lack of communication with his supervisors, which had nothing to do with his national origin, race or citizenship status.  In addition, LIU had just hired Plaintiff with knowledge of his protected classes and filed for a H-1B visa on his behalf, making it unreasonable to think that LIU would then discriminate against him on these grounds. As a result, no reasonable juror could find that Plaintiff engaged in protected activity by reasonably believing in good faith that LIU violated Title VII, NYSHRL or NYCHRL. *See Rivera*, 951 F.Supp.2d at 401 (dismissing retaliation claim when plaintiff could not have reasonably believed that the conduct of which he complained violated Title VII).

14

Plaintiff also did not engage in protected activity under Title VII. Title VII makes it unlawful to retaliate against an employee "…because he has … assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 USCS §§ 2000e-2000e-17]." 42 U.S.C. §2000e-3(a)(emphasis added). Thus, only claims actually involving Title VII will be protected against retaliation. As the Bavadekar Action only raised claims under the NYSHRL and NYCHRL, and not Title VII, Plaintiff cannot premise a Title VII retaliation claim on his actions in support of Bavadekar. Munsky Aff., Ex. CC.

Assuming *arguendo* that Plaintiff engaged in protected activity, for purposes of this motion only, LIU does not dispute that LIU had general corporate knowledge of the Affidavit and that Plaintiff's non-reappointment, and eventual termination from employment, constitutes an adverse employment action. However, Plaintiff has not established a causal connection between his authoring the Affidavit and his non-reappointment. To establish a causal connection, Plaintiff must demonstrate that "the allegedly adverse actions occurred in circumstances from which retaliatory intent can reasonably be inferred." *Delgado v. Triborough Bridge and Tunnel Authority*, 485 F.Supp.2d 453, 461 (S.D.N.Y. 2007). Plaintiff can establish this either directly, through evidence of retaliatory animus directed against Plaintiff, or indirectly, by establishing that the protected activity was followed closely by discriminatory treatment or other circumstantial evidence. *Fraser*, 307 F.Supp.3d at 115 (citations omitted).

The only evidence that Plaintiff offers to support an inference of direct retaliatory animus is his alleged claim that Shah made an alleged comment to Plaintiff that Gross allegedly informed Shah that he would not consider reappointment based on the Affidavit. Such a remark, even if true, constitutes inadmissible hearsay and may not be relied upon to oppose summary judgment. *See Chansamone v. IBEW Local 97*, 523 Fed.Appx. 820, n4 (2d Cir. 2013)(citations omitted).

Plaintiff has not presented any evidence of indirect retaliatory animus. Significantly, there is no evidence that any of the decision makers were aware of the Affidavit or that they acted on orders of a superior who had knowledge.  Although Dave testified that he was aware that Plaintiff had some involvement with the Bavadekar Action, he had no specific knowledge of what that involvement entailed. "Plaintiff cannot rely on general corporate knowledge alone to satisfy the third 'causal connection' prong." *Ehrbar v. Forest Hills Hospital*, 131 F.Supp.3d 5, 34 (E.D.N.Y. 2015)(citing *Zann Kwan*, 737 F.3d at 844, n.4)(dismissing retaliation claim when decision makers did not have knowledge of protected activity and was 4.5 months between protected activity and adverse action). "[W]here it is undisputed that the decision maker was unaware of the employee's protected activity, that fact may be evidence that there is no causal connection." *Id.* (citations omitted).

Plaintiff also cannot establish indirect retaliatory animus by showing that his authoring of the Affidavit in January was followed closely by his notice of non-reappointment in late August, seven months later, and eventual termination, one year and seven months later. "[T]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close."  *Fraser*, 307 F.Supp.3d at 115 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)); *see Ehrbar*, 131 F.Supp.3d at 34. Many courts have found that two to three months between the protected activity and the adverse action is too long to establish a causal connection. *See Fraser*, F.Supp.3d at 115 (citing *Hollander v. American Cyanamid Co*., 895 F.2d 80 (2d Cir. 1990)); *Gilford v. City of New York*, 2004 WL 1574695, *7 (S.D.N.Y. 2004), *aff'd*, 136 Fed. Appx. 390 (2d Cir. 2005); *Cunningham v. Con. Ed*., 2006 WL 842914, *19 (E.D.N.Y. 2006).

Plaintiff also cannot establish indirect retaliatory animus by alleging disparate treatment. Plaintiff makes the conclusory assertion that because he was the one who wrote the Affidavit and was

not reappointed, it must have been because of the Affidavit. Here, Plaintiff is not similarly situated to

any faculty reappointed in the Pharmacy Practice Division as they were not on a tenure track, did not

teach similar subject matter as Plaintiff and were reviewed by a different Division Director.  Plaintiff is

also not similarly situated to Ponnoth or Yen-Yeh, the two faculty in Plaintiff's Division reappointed in

Spring 2015. Ponnoth was granted a first reappointment, whereas Plaintiff applied for a third

reappointment, two years closer to possible tenure. While Yen-Yeh received a third reappointment, he

taught different subjects than Plaintiff and was more successful in his scholarship, having ██████████

██████████████████████ while at LIU. Significantly, Yen-Yeh was not reappointed in the next

year, confirming that the Affidavit played no role in LIU's non-reappointment of Plaintiff. Since

Plaintiff cannot establish a *prima facie* case of retaliation, his claims should be dismissed as a matter of

law.

>       2.       LIU Had Legitimate, Non-Retaliatory Reasons for its Non-Reappointment of
>                Plaintiff and Plaintiff Cannot Establish Pretext

Assuming *arguendo* that Plaintiff can establish a *prima facie* case, LIU clearly had legitimate,

non-retaliatory reasons for not reappointing Plaintiff.  As discussed *supra*, three levels of review,

Division Director, Dean and VPAA, made the academic judgment that Plaintiff was not deserving of

reappointment. This decision was based on such elements as the "mediocre" quality of his teaching

based on student evaluations, his deficient scholarship resulting from his lack of both published peer-

reviewed journal articles and grants during his tenure at LIU, and merely satisfactory service.  Although

the FRC recommended reappointment, the FRC also noted teaching and scholarship deficiencies. As

"[p]oor work performance is consistently recognized in this Circuit as a legitimate, non-discriminatory

reason for termination...," LIU had legitimate, non-retaliatory reasons to not reappoint Plaintiff.  *Genao

v. Avon Salon & Spa*, 2008 WL 190605, *5 (S.D.N.Y. 2008)(citations omitted); *see Rosenberg v.

Chesapeake Pharmaceutical and Health Care Packaging*,  888 F.Supp.2d 302, 309 (E.D.N.Y.

2012)(courts may not "sit as super personnel departments, assessing the merits—or even the rationality—of employers' non-discriminatory business decisions" (citations omitted)).

Moreover, in the absence of any evidence that LIU's decision was based on improper considerations, it is respectfully submitted that the Court should not overturn this matter of LIU's academic judgment.  In *Faro v. New York University*, 502 F.2d 1229 (2d Cir. 1974), the Second Circuit held: "[o]f all fields, which the [] courts should hesitate to invade and take over, education and faculty appointments at a University level are probably the least suited for [] court supervision."; *see also Matter of Pace Coll. v. Commission on Human Rights*, 38 NY2d 28, 377 N.Y.S.2d 471, 478-479 (N.Y. 1975). There can be no doubt that whether or not a probationary faculty member maintains the necessary credentials to continue on his path to tenure, a lifetime appointment, is a matter that involves purely issues of academic judgment.

As LIU had legitimate, non-retaliatory reasons for its actions, Plaintiff must establish pretext by demonstrating that LIU's desire to retaliate based on the Affidavit was the "but-for" cause of his non-reappointment. Plaintiff cannot do so. First, Plaintiff was on notice of his teaching and scholarship deficiencies in his first and second reappointments, prior to his authoring the Affidavit, yet failed to improve. *See Ehrbar*, 131 F.Supp.3d at 36.  Second, any argument that the temporal proximity between Plantiff's authoring the Affidavit and his notice of non-reappointment, seven months later, evidences pretext is not sufficient without any other evidence. *See Dall v. St. Catherine of Siena Medical Center*, 966 F.Supp.2d 167, 195-196 (E.D.N.Y. 2013)(dismissing retaliation claim); *see Ehrbar*, 131 F.Supp.3d at 36.  Third, to the extent Plaintiff challenges LIU's academic judgment as he claims to be qualified for reappointment, "a plaintiff's factual disagreement with the validity of an employer's non-discriminatory reason for adverse employment decisions does not, by itself, create a triable issue of fact." *Fleming v. MaxMara USA, Inc*., 644 F.Supp. 2d 247, 266 (E.D.N.Y. 2009).

Plaintiff cannot show that any of the comments in the recommendations for non-reappointment were filled with "weaknesses, implausibilities, inconsistencies, or contradictions." *Bowen-Hooks v. City of New York*, 13 F.Supp.3d 179, 233 (E.D.N.Y. 2014)(citations omitted)(dismissing retaliation claims in the absence of a retaliatory motive). His student evaluations were mediocre. His peer evaluation was good, but pretty standard within the Division. At the time he submitted his application, he had not published in any peer-reviewed journals. His service was satisfactory, but he still had not demonstrated leadership qualities.

Significantly, Dave and Gross advised Plaintiff in their recommendations to reapply prior to August 31, 2016 and provided guidance on how to improve his chances. Although Plaintiff accessed his file in January 2016 and reviewed these recommendations, Plaintiff has not provided an explanation for his failure to reapply. What is clear is that such overtures by Dave and Gross on behalf of LIU are completely inconsistent with a retaliatory motive.  Plaintiff also cannot establish that but for his authoring the Affidavit he would have been reappointed if he never took advantage of the opportunity to reapply. Accordingly, Plaintiff's Title VII and NYSHRL retaliation claims should be dismissed.  *See Russo v. New York Presbyterian Hosp.*, 972 F.Supp.2d 429, 456-457 (E.D.N.Y. 2013)(dismissing retaliation claims); *Facey v. Equinox Holding, Inc.*, 2013 WL 153696, *7 (E.D.N.Y. 2013)(dismissing retaliation claim).

### B.      Plaintiff's NYCHRL Retaliation Claim Should Also Be Dismissed

For the reasons set forth *supra*, Plaintiff's NYCHRL retaliation claim should also be dismissed. "The NYCHRL's retaliation provision 'protect[s] plaintiffs who oppose any practice forbidden under the law from conduct reasonably likely to deter a person engaging in such action.'"  *Esar v. JP Morgan Chase Bank N.A.*, 2018 WL 2075421, *16 (E.D.N.Y. May 3, 2018)(citing *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015)).  To succeed on a retaliation claim, Plaintiff must establish that LIU or

a decision maker "engaged in some prohibited conduct" and that the "the decision to do so was caused at least in part by retaliatory motives." *Id*. For the reasons set forth *supra*, Plaintiff has not, because he cannot, establish that his non-reappointment was caused even in part by any retaliatory motives related to the Affidavit. Dave and Gross would not have informed Plaintiff that he could reapply for reappointment if there was any retaliatory animus.

**POINT TWO**

**LIU DID NOT RETALIATE AGAINST PLAINTIFF
FOR TAKING LEAVE UNDER THE FMLA**

Plaintiff's claim that LIU retaliated against him for taking FMLA leave in February 2015 should also be dismissed. FMLA retaliation claims are analyzed under *McDonnell Douglas*. *Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004)(affirming dismissal of FMLA retaliation claim). To establish a *prima facie* case of retaliation, Plaintiff must establish that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Id.* If Plaintiff can establish a *prima facie* case of retaliation, LIU must demonstrate a legitimate, non-retaliatory reason for its actions. If LIU meets this burden, then Plaintiff must demonstrate that LIU's reason is pretextual. *McGuiness v. East West Industries*, 857 F.Supp.2d 259, 263-64 (E.D.N.Y. 2012).

Assuming *arguendo* that Plaintiff exercised his FMLA rights by taking leave, Plaintiff cannot establish that LIU denied his application for a third reappointment under circumstances giving rise to an inference of retaliation. A causal connection between the alleged adverse action and protected activity can be established either indirectly, through temporal proximity between the events or examples of disparate treatment of similarly-situated employees, or directly through evidence of

retaliatory animus. *Alexander v. Board of Educ. Of City School Dist. Of the City of New York*, 107 F.Supp.3d 323, 329 (S.D.N.Y. 2015), *aff'd*, 648 Fed. Appx. 118 (2d Cir. 2016).

Plaintiff has failed to present any evidence of direct retaliatory animus. Plaintiff failed to provide thirty days notice of his need for foreseeable FMLA leave to care for his newly born child consistent with FMLA regulations and LIU's policy. *See* 29 C.F.R. 825.302(a)("[a]n employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for leave is foreseeable based on an expected birth…"); Munsky Aff., Ex. C.  Although Plaintiff sent an email on November 25, 2014 inquiring as to the process for taking leave, he failed to contact HR to initiate the process nor respond to his supervisors' requests for the anticipated start and return date until <u>after</u> his child was born and one week before he sought to start leave. Despite Plaintiff's dilatory notice and his failure to submit the required FMLA paperwork until after returning from leave, LIU permitted Plaintiff to commence leave on February 2, 2015. Plaintiff never advised LIU of his anticipated return date, simply notifying LIU on March 1, 2015 that he wished to return to work immediately, which was granted.

While Plaintiff will likely argue that the references by Dave and Gross to Plaintiff's FMLA leave in their recommendations evidences retaliatory animus, neither Dave nor Gross expressed any concern in their recommendations with the fact that Plaintiff went on FMLA leave. 56.1, ¶¶97, 122. Rather, the recommendations refer to Plaintiff's lack of communication concerning his anticipated start date and duration of leave as it was clear that Plaintiff knew he desired to take leave in late November, yet failed to advise LIU of his desired start date until January 17, after classes commenced and one week before his desired start date. Had Plaintiff provided an anticipated start date and duration when initially requested, even if the exact start date had to be modified based on his child's birth, LIU could have made arrangements for course coverage in a less time-sensitive manner to lessen any impact on

student learning. For example, if Plaintiff had provided the anticipated duration of his FMLA leave, LIU could have possibly scheduled a course to start after Plaintiff's return, rather than cancel the course. Dave 126:11-127:8; Dave Aff., ¶31. LIU had previously placed Plaintiff on notice in the Taft Memo of the importance of communication in ensuring student learning is not affected. Additionally, Kane, the final decision maker, reached a similar result without regard to Plaintiff's communications concerning his FMLA leave request.

Plaintiff also cannot raise an indirect inference of retaliation by arguing that the denial of his reappointment application on August 31, 2015 occurred in close proximity to his return from leave on March 2, 2015, as "district courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Rinaldi v. Quality King Distributors, Inc*., 29 F.Supp.3d 218, 231 (E.D.N.Y. 2014)(dismissing when proximity of 2.5 months); *see Clemens v. Moody's Analytics, Inc*., 2018 WL 1750586, * 4 (dismissing when proximity of 4 months); *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 538, 2009 WL 1391258 (S.D.N.Y. 2009) (dismissing when proximity of 2.5 months).

For the reasons in Point One *supra*, LIU had legitimate, non-retaliatory reasons for recommending non-reappointment that had nothing to do with Plaintiff's FMLA leave. Rather, Plaintiff had been on notice of his deficient teaching and scholarship in prior appointments, yet failed to improve. "Because poor job performance constitutes a legitimate, non-discriminatory reason, Defendant[] ha[s] satisfied their burden of production." *E.E.O.C. v. Town of Huntington*, 2008 WL 361136, *7 (E.D.N.Y. 2008)(citing *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir.2001)("An employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action.")).

Plaintiff also cannot provide any evidence of pretext. LIU granted Plaintiff's FMLA leave and restored Plaintiff to his position, despite his dilatory request for leave, failure to timely submit the necessary FMLA paperwork and only providing one day's notice of his desire to return from leave. *See McGuiness*, 857 F.Supp.2d 259 at 265-266. Moreover, Dave and Gross advised that Plaintiff could reapply for reappointment, negating any possible retaliatory animus.

Courts have dismissed FMLA retaliation claims in the absence of pretext. For example, in *McGuiness*, 857 F.Supp.2d 259 at 265-266, the Court dismissed Plaintiff's FMLA retaliation claim as the employer provided evidence as to the plaintiff's "substandard performance at work," the employer granted plaintiff leave and restored him to his position, as well as warned plaintiff about his work performance issues. *Id*. at 265-266.  *See also Hill v. New York City Housing Authority*, 220 F.Supp.3d 499, 508 (S.D.N.Y. 2016)(plaintiff failed to establish pretext when "[d]efendant's justification – Plaintiff's poor work performance – is clearly well-documented, predates any application for FMLA leave, and is divorced from any retaliatory motive."); *Serby v. New York City Dept. of Educ.*, 526 Fed. Appx 132, 134 (2d Cir. 2013)(affirming dismissal of FMLA retaliation claim as "we have no basis to second-guess these educational policy decisions, and these disagreements do not support her claim for retaliation." ); *Skates v. Incorporated Village of Freeport*, 265 F.Supp.3d 222, 241-42 (E.D.N.Y. 2017)(dismissing FMLA retaliation claim).  Based on the above, Plaintiff's FMLA retaliation claim should be dismissed.

## POINT THREE
## LIU DID NOT INTERFERE WITH PLAINTIFF'S RIGHTS UNDER THE FMLA

Plaintiff's claim that LIU interfered with his rights under the FMLA should be dismissed as untimely as the FMLA's statute of limitations is two years, which can be extended to three years for willful violations. *See* 29 U.S.C. §§2617(c)(1)-(2). "An employer acts willfully under the FMLA when it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the

FMLA." *Esar*, 2018 WL 2075421, *16-17 (dismissing FMLA interference claim as untimely when no showing of willfulness). Plaintiff returned from leave on March 2, 2015, yet did not file this action until April 10, 2017, over two years later. Even if Plaintiff can prove interference, which LIU denies, Plaintiff has failed to provide any evidence that LIU knew or recklessly disregarded whether its conduct violated the FMLA in order to establish a willful FMLA violation and extend the statute of limitations to three years, requiring dismissal of the claim. *See id.*

Assuming *arguendo* that Plaintiff's FMLA interference claim is deemed timely, Plaintiff's claim still must be dismissed as a matter of law.  Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA. 29 U.S.C. §2615(a)(1). A FMLA interference claim can be based on an employer's refusal to authorize FMLA leave or discouragement from using leave. 29 C.F.R. §825.220(b); *see Rinaldi*, 29 F.Supp.3d at 229. To state a claim, Plaintiff must establish that: (1) he is an eligible employee under the FMLA; (2) LIU is an employer under the FMLA; (3) he was entitled to take FMLA leave; (4) he gave notice to LIU of his intention to take leave; and (5) he was denied benefits to which he was entitled under the FMLA. *Graziadio v. Culinary Inst. of America*, 817 F.3d 415, 424 (2d Cir. 2016).

Plaintiff cannot establish a *prima facie* case of interference as there is no evidence that Plaintiff was denied a benefit or right under the FMLA.  It is undisputed that Plaintiff was dilatory in making his request for FMLA leave, which LIU granted, and requested to be reinstated upon one day's notice, which LIU also granted. Plaintiff also cannot establish that LIU discouraged him from taking leave as he allegedly felt compelled to return earlier than some unspecified date based on Dave's alleged remark. Under the "discouragement theory," Plaintiff must show that after asserting his FMLA rights, he was then discouraged from taking leave by LIU in such a way that would have "dissuaded a similarly situated employee of ordinary resolve from attempting to exercise his FMLA rights." *Rinaldi,*

24

29 F.Supp.3d at 229; *see Reilly v. Revlon, Inc.*, 620 F. Supp.2d 524, 535 (S.D.N.Y. 2009)(dismissing FMLA retaliation and interference claims).  Dave's alleged stray remark would not have dissuaded a similarly situated employee of ordinary resolve from continuing his FMLA leave, particularly as Plaintiff was aware that Dave was not the final decision maker. *See Fernandez v. Woodhull Medical and Mental Health Cente*r, 2017 WL 3432037, *9 (E.D.N.Y. 2017). Plaintiff was able to return from leave on his own volition. Significantly, Plaintiff informed LIU on May 14, 2015 that he was considering taking additional FMLA leave, negating any argument that he was discouraged.

As Plaintiff has not provided evidence that anyone at LIU told Plaintiff that he could not take FMLA leave or that he had to return from FMLA leave on March 2, 2015, Plaintiff's interference claim should be dismissed. In fact, LIU accommodated Plaintiff's request for leave by granting his request, despite late notice and deficient documentation, the exact opposite of Plaintiff's claim that he was discouraged from taking leave.

## **CONCLUSION**

For the reasons set forth above, LIU respectfully requests that this Court grant its motion for summary judgment in its entirety, dismiss Plaintiff's Complaint and award LIU such other and further relief as this Court deems just and proper.

Dated:  New York, New York                   Respectfully Submitted,
        November 15, 2018                  CLIFTON BUDD & DeMARIA, LLP
                                           By: /s/ Douglas P. Catalano
                                                Douglas P. Catalano
                                                Stefanie R. Munsky