# CLIFTON BUDD & DEMARIA, LLP
## ATTORNEYS AT LAW

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE, 61ST FLOOR
NEW YORK, NY 10118

TEL 212.687.7410
FAX 212.687.3285
WWW.CBDM.COM

February 13, 2019

**VIA ECF**
Honorable Nicholas G. Garaufis
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Sarsvatkumar Patel v. Long Island University,* 17-cv-02170 (NGG)(JO)

Dear Judge Garaufis:

      This firm represents Long Island University ("LIU").  Pursuant to Local Civil Rule 37.3, we write to respectfully request that the Court strike certain deposition testimony of Jeffrey Kane ("Kane"), a LIU witness, who inadvertently revealed alleged attorney-client communications between Kane and LIU's Associate Counsel and that was properly objected to at the deposition by Douglas Catalano, Esq. ("Catalano"), LIU's counsel.[1] LIU also respectfully requests that the Court strike any references to such alleged privileged testimony in Plaintiff's opposition to LIU's motion for summary judgment.[2]

      By way of background, Plaintiff, a former faculty member at LIU, alleges that LIU retaliated against him for authoring an affidavit in support of another former co-worker's lawsuit against LIU by denying Plaintiff's application for a third reappointment. Plaintiff also alleges that LIU retaliated against him because he took leave under the Family and Medical Leave Act ("FMLA") and interfered with Plaintiff's rights under the FMLA.

      During discovery, Plaintiff's counsel deposed Kane, the former Vice President of Academic Affairs at LIU and the final decision maker during the reappointment process that resulted in Plaintiff's non-reappointment. At the deposition, Plaintiff's counsel questioned Kane concerning his involvement with the recommendation of non-reappointment by Rutesh Dave ("Dave"), the Division Director and the first reviewer in the reappointment process.  In the course of being asked who sent Kane the recommendation, Kane responded that it may have been Matthew Siebel, Esq. ("Siebel"), LIU's Associate Counsel, and then inadvertently testified as to what Siebel allegedly told him in the context of providing a legal opinion.  Kane testified:

      Q:    Who forwarded you the recommendation that concerned you?

---

[1] In the event that the Court denies LIU's motion, LIU respectfully requests that any references to the testimony at issue be filed under seal.

[2] This includes the relevant portion of Kane's transcript on page 45 annexed to the Declaration of Joshua Beldner, paragraphs 96.19 and 112.7 of Plaintiff's Counterstatement of Facts to Rule 56.1 and the relevant language in page 21 of Plaintiff's memorandum of law.

**CLIFTON BUDD & DEMARIA, LLP**

Honorable Nicholas G. Garaufis
February 13, 2019
Page 2

      A:      Again, my recollection isn't exactly clear, but it might have been Matt Siebel who came to my office and said [Redacted as this is the language that LIU contends is subject to the attorney-client privilege and should be stricken]³. Normally –

      MR. CATALANO:      It's okay that he said Matt Siebel came to his office. What Matt Siebel said to him though should be stricken because it's attorney-client. I would like a concession on that.

      MR. BELDNER:      What I would say, anything that Matt Siebel told you with respect to any legal advice, I do not want to know and please don't disclose that.

      THE WITNESS:      Okay, I understand.

      MR. BELDNER:      However, Doug, if there is a conversation, a general topic I can ask what that is about because it's not legal advice.

      MR. CATALANO:      I didn't quarrel with that. Also he said Matt Siebel came to his office, and that is an area of inquiry. I understand that. Then he said Matt Siebel said to me; that is different. I think we are in agreement.

(Kane Tr. pp. 45-46).

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007)(citing *United States v. Const. Prod. Research, Inc.,* 73 F.3d 464, 473 (2d Cir.1996)). "Its purpose is to encourage attorneys and their clients to communicate fully and frankly and thereby to promote broader public interests in the observance of law and administration of justice." *Id.* (citations omitted). "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Id.* (citations omitted).

Recognizing that it is LIU's burden to establish the applicability of the attorney-client privilege, here it is clear that there was a communication between client and counsel as Siebel is the Associate Counsel at LIU and Kane was part of LIU's leadership team. *See Johnson v. Medisys Health Network*, 2011 WL 5222917, *23 (E.D.N.Y. 2011)("Corporations also have a privilege as to communications between in-house counsel and corporate representatives.") (citations omitted). The alleged communication between Siebel and Kane was intended to be confidential as there is no indication that others were present or that the communication was intended to be relayed to others. The alleged communication took place in Kane's private office. As for the third factor, it cannot be disputed that the alleged communication at issue was made for the purpose of Kane seeking and Siebel providing legal advice to Kane. The alleged

---

³ LIU will provide an unredacted copy of the relevant deposition transcript pages to the Court.

**CLIFTON BUDD & DEMARIA, LLP**

Honorable Nicholas G. Garaufis
February 13, 2019
Page 3

communication from Siebel to Kane was the expression of a legal opinion based on Siebel's review of a document, Dave's recommendation of Plaintiff's non-reappointment.

That Siebel communicated with Kane concerning the recommendation is not privileged. As Catalano promptly noted at the deposition, what Siebel allegedly communicated to Kane concerning his legal opinion as to his review of the recommendation and its propriety is subject to the attorney-client privilege. This is not a situation of in-house counsel providing business advice as Siebel's responsibilities as in-house counsel concern ensuring compliance with all collective bargaining agreements and applicable employment laws.

To the extent that Plaintiff may argue that Kane waived the privilege, LIU respectfully submits that such an argument is unavailing. "While it is true. . . that when a corporation decides to waive the privilege its officers or counsel must communicate this decision, it does not necessarily follow that a corporate officer testifying in his individual capacity can waive the corporate privilege without that entity's consent." *United States v. John Doe Corp. (In re Grand Jury Proceedings)*, 219 F.3d 175, 185 (2d Cir.2000). In this action, Plaintiff's counsel requested to depose Kane, rather than Kane being produced by LIU as a Rule 30(b)(6) witness, indicating that he was testifying in his individual capacity and not on behalf of LIU.

Assuming *arguendo* that Kane had the ability in his role at LIU to waive the attorney-client privilege on behalf of LIU, which LIU denies, the fairness of such an inadvertent disclosure by Kane should be considered before any determination that there was an implied waiver. *See id*. Here, Kane was asked a question that started with "Who" to which he responded and then inadvertently disclosed what Siebel allegedly communicated to him. Catalano promptly objected and requested that the inadvertent disclosure be stricken from the record. Plaintiff's counsel did not make a specific objection to Catalano's application at that time and, as such, it was not until LIU received Plaintiff's opposition papers containing references to the language at issue that it learned that this matter had not been resolved, resulting in the instant application. The prejudicial effect of failing to strike such privileged testimony would outweigh any possible relevance to Plaintiff's claims.

As there is no dispute that the alleged communication from Siebel to Kane relaying a legal opinion concerning Siebel's review of the recommendation is subject to the attorney-client privilege and that Kane had no ability to waive that privilege on behalf of LIU (and even if he could, Kane's testimony was an inadvertent disclosure that was promptly and properly objected to by Catalano), LIU respectfully requests that this testimony be stricken from the record.

We have conferred with Plaintiff's counsel who does not consent to striking the testimony at issue. As a courtesy, Plaintiff's counsel consented to allowing LIU to redact the language at issue as confidential in the electronically filed copies of Plaintiff's opposition papers pending a determination on this issue. Unredacted copies of the parties' respective summary judgment motion papers were delivered to the Court on February 8, 2019.

Thank you for Your Honor's consideration of this matter. Please contact the undersigned if you have any questions or require further briefing on this matter.

**CLIFTON BUDD & DEMARIA, LLP**
Honorable Nicholas G. Garaufis
February 13, 2019
Page 4

                                                         Respectfully submitted,
                                                         CLIFTON BUDD & DEMARIA, LLP
                                                         *Attorneys for Long Island University*

                                                          */s/ Stefanie Munsky*

                                         By:    Douglas Catalano
                                                       Stefanie Munsky

cc:    Joshua Beldner, Esq.

# EXHIBIT A

```
 1                    Jeffrey Kane
 2      Q.     You mean Dr. Dave?
 3      A.     Dr. Dave, yes.
 4             There doesn't seem to be anything that I
 5  can see inappropriate here.
 6      Q.     Do you recall whether you were
 7  involved at all in the drafting of Dr. Dave's
 8  recommendation of Dr. Patel?
 9      A.     Again, obviously my recollection here
10  is a bit muddled, but I do recall that there was a
11  recommendation that was forwarded that included
12  things that I did not think were appropriate and I
13  expressed my concern about it.
14      Q.     Who forwarded you the recommendation
15  that concerned you?
16      A.     Again, my recollection isn't exactly
17  clear, but it might have been Matt Siebel who came
18  to my office and said, ███████████████████████
19  ████████████. Normally --
20             MR. CATALANO:    It's okay that he
21         said Matt Siebel came to his office.  What
22         Matt Siebel said to him though should be
23         stricken because it's attorney-client.  I
24         would like a concession on that.
25             MR. BELDNER:    What I would say,
```

46

1      Jeffrey Kane
2      anything that Matt Siebel told you with
3      respect to any legal advice, I do not want to
4      know and please don't disclose that.
5              THE WITNESS:   Okay, I understand.
6              MR. BELDNER:   However, Doug, if
7      there is a conversation, a general topic I
8      can ask what that is about because it's not
9      legal advice.
10             MR. CATALANO:   I didn't quarrel with
11     that.  Also he said Matt Siebel came to his
12     office, and that is an area of inquiry.  I
13     understand that.  Then he said Matt Siebel
14     said to me; that is different.  I think we
15     are in agreement.
16     Q.     Dr. Kane, I have just handed you what
17 is marked and introduced as Plaintiff's Exhibit
18 11.  If you look at the second page of that
19 document first, that is an email from Erica
20 Valentin to you dated May 6, 2017, correct?
21     A.     Yes.
22     Q.     Who is Miss Valentin?
23     A.     She was, I think, the secretary for
24 the Dean of the College of Pharmacy.
25     Q.     Dean Gross?