UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SARSVATKUMAR PATEL,

               Plaintiff,

      -against-

LONG ISLAND UNIVERSITY,

               Defendant.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-2170 (NGG) (JO)**



NICHOLAS G. GARAUFIS, United States District Judge.

    Plaintiff Sarsvatkumar Patel brings this action against Defendant Long Island University ("LIU"). (Compl. (Dkt. 1).) Plaintiff asserts claims of retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 § U.S.C. §§ 2000e *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101 *et seq.* Plaintiff also asserts claims of retaliation and interference under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*

    Defendant moves for summary judgment on all claims. (Def. Mot. For Summ. J. (Dkt. 35); Mem. in Support of Mot. for Summ. J. ("Mem.") (Dkt. 39); Reply (Dkt. 46).) Plaintiff opposes the motion. (Mem. in Opp. to Def. Mot. for Summ. J. ("Opp.") (Dkt. 43).) For the reasons set out below, Defendant's motion is DENIED.

## I.    BACKGROUND

    The court constructs the following statement of facts from the parties' Local Rule 56.1 Statements and the admissible evidence they submitted. Except where otherwise noted, the following facts are undisputed. Where the parties allege different facts, the court notes the dispute and credits the Plaintiff's version if it is supported by evidence in the record. All

1

evidence is construed in the light most favorable to the non-moving party with all "reasonable inferences" drawn in its favor. *ING Bank N.V. v. M/V Temara, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).

LIU maintains both an "Anti-Harassment/Discrimination Policy & Complaint Procedure" and a "Family & Medical Leave Act Policy and Procedure." (Def. R. 56.1 Statement ("Df. 56.1") (Dkt. 36) ¶¶ 1, 6.) The Anti-Harassment/Discrimination Policy "prohibits retaliation against a faculty member . . . who complains of discrimination or engages in other protected activity." (*Id.* ¶ 5.) The FMLA policy includes a procedure for requesting FMLA leave. (*Id.* ¶ 8.) Under this procedure, an employee requesting leave must "timely inform both their supervisor and Human Resources . . . that they need family or medical leave and how long they expect to be absent." (*Id.* ¶ 9.) After notice is given, LIU Human Resources ("HR") provides the requesting employee with a form that "should be returned at least 30 days in advance for foreseeable leaves." (*Id.* ¶ 10.)

In January 2012, Plaintiff was offered a position as an Assistant Professor at the LIU College of Pharmacy's ("CoP") Division of Pharmaceutical Sciences ("DPS"). (*Id.* ¶ 48.) DPS is administered by a division director. (*Id.* ¶ 16.) The DPS director reports to the dean of CoP, who in turn reports to LIU's Vice President of Academic Affairs ("VPAA"). (*Id.* ¶¶ 17-18.) Anthony Cutie was the DPS Director when Plaintiff was hired. (*Id.* ¶ 20.) Rutesh Dave became the DPS director on January 1, 2014 and remains in that position. (*Id.* ¶ 21.) David Taft was the dean of CoP when Plaintiff was hired and remained in that position through August 2013; Stephen Gross was the dean of CoP from August 2013 through August 2015. (*Id.* ¶ 22.) Jeffrey Kane was the VPAA throughout Plaintiff's employment at LIU. (*Id.* ¶ 19.)

The assistant professor position is a tenure-track position, which means that Plaintiff was considered a probationary employee and was required to apply for reappointment annually until after his sixth year, at which point he would be able to apply for tenure. (*Id.* ¶¶ 27, 28, 51.) To apply for reappointment, the employee submits a reappointment file to the division director, who reviews it and makes a recommendation for or against reappointment. (*Id.* ¶¶ 31, 36.) The file is also reviewed by the Faculty Review Committee ("FRC") and the dean of CoP, each of whom also make a recommendation for or against reappointment. (*Id.* ¶¶ 37-38.) The Collective Bargaining Unit in place at LIU limits the criteria that may be considered when evaluating a reappointment application to the faculty member's teaching, scholarship, and service. (*Id.* ¶ 42.) After the review process, the three recommendations are sent to the VPAA, who makes the final decision. (*Id.* ¶ 39.) Plaintiff notes that both Gross and Kane testified that Kane rarely or never disagreed with Gross's recommendation for or against reappointment of a faculty member. (Pl. R. 56.1 Statement ("Pl. 56.1") (Dkt. 40) ¶¶ 39.5-39.6.)

Plaintiff was originally offered a start date of January 16, 2012, but, due to visa issues, assumed his position on September 1, 2012. (Df. 56.1 ¶¶ 48-49.) Plaintiff visited India during the winter break following his first semester. (*Id.* ¶ 55.) Due to visa issues, Plaintiff was unable to return as planned for the beginning of the 2013 spring semester; Plaintiff returned to LIU on February 7, 2013. (*Id.* ¶¶ 55, 61.) Taft wrote a memo expressing displeasure with Plaintiff's absence for the beginning of the semester. (*Id.* ¶ 63.)

LIU granted Plaintiff's first and second reappointment applications. (*Id.* ¶¶ 64-69.) On November 24, 2014, Plaintiff emailed Gross to request leave to care for his baby, which was due to be born shortly thereafter. (*Id.* ¶ 70.) Gross responded, in part, by stating that LIU "will of course comply with any rules and regulations regarding paternity leaves." (*Id.* ¶ 72.) Dave

responded to Plaintiff's notice of anticipated FMLA leave, in part, by writing "[c]ongratulations and if you finalize your possible leave of absence with HR please let me know the exact dates of your absence." (*Id.* ¶ 73.) On January 13, 2015, Plaintiff again emailed Gross and Dave and asked about "the procedure for [taking a] leave of absence to take care of my family and newborn." (*Id.* ¶ 76.) According to a memorandum sent by Gross to HR, Plaintiff began unpaid leave on February 2, 2015. (*See* Gross Mem. to Maria Greco ("Greco Mem.") (Dkt. 38 at Ex. B).)

Plaintiff testified that he ran into Dave while visiting the LIU campus during his leave and that Dave told him that "nobody takes this kind of leave, you cannot just go like this. This could affect your reappointment and tenure." (Pl. 56.1 ¶ 83.2; Tr. of Mar. 8, 2018 Dep. of Sarsvatkumar Patel ("Patel Dep.") (Dkt. 41-1 at Ex. A) at 121:2-7.) Plaintiff testified that after this interaction, he felt "forced to come back" from his leave because he "was worried about [his] job." (Pl. 56.1 ¶ 83.3; Patel Dep. at 122:4-7.) Dave denies that he said this. (Pl. 56.1 ¶ 83.4; Tr. of Mar. 23, 2018 Dep. of Rutesh Dave ("Dave Dep.") (Dkt. 41-1 at Ex. B) at 66:7-16.) However, Dave testified that in his seven years at LIU, Plaintiff was the first male faculty member to take FMLA leave to care for a newborn during the school year. (Dave Dep. at 66:21-67:5.) Dave further testified that he expressed concern about Plaintiff's FMLA leave during an Executive Committee[1] meeting a few days after the leave began, and that Plaintiff's leave made Dave's life "more chaotic than it needed to be." (*Id.* at 134:19-21; 136:21-137:14, 138:16-24; Pl. 56.1 ¶¶ 83.9-83.11.) Plaintiff returned to work around March 2, 2015. (Df. 56.1 ¶¶ 84-85.)

On or around January 16, 2015, prior to beginning his FMLA leave, Plaintiff authored an affidavit in support of a former LIU faculty member, Supriya Bavadekar. (Df. 56.1 ¶ 87.) Ms.

---

[1] The Executive Committee consists of each dean and division director in CoP. (*See* Pl 56.1 ¶ 83.7; Dave Dep. 136:12-20.)

Bavadekar's lawsuit (the "Bavadekar Action") against LIU alleged discrimination on the bases of, *inter alia*, her race, national origin, and gender. (Pl. 56.1 ¶ 87.1); *see also Supriya Bavadekar v. Long Island University, et al.*, No. 6186/2014 (Kings Cty. Sup. Ct.). Plaintiff's affidavit took exception to the Taft memo and contended that Taft and Cutie discriminated against him because of his race and national origin. (Df. 56.1 ¶¶ 88-89.) The parties dispute whether Dave, Gross or Kane were aware of the affidavit. (*See* Df. 56.1 ¶¶ 92-94; Pl. 56.1 ¶¶ 92.1-92.11.) However, Dave testified that he was made aware that Plaintiff was involved in the Bavadekar Action at a meeting that he attended along with Gross. (Dave Dep. at 43:9-13, 47:10-48:23.) Additionally, Defendant admitted in its interrogatory responses that Kane was made aware of Plaintiff's affidavit. (Df. Am. Responses to Interrogatories (Dkt. 41-2 at Ex. I) at 5.)

Plaintiff filed for his third reappointment on March 9, 2015. (Df. 56.1 ¶ 95.) On May 7, 2015, Dave recommended against reappointing Plaintiff. (*Id.* ¶ 96.) Defendant submits that the recommendation against reappointment was based on Plaintiff's substandard performance in the areas of teaching, scholarship, and service. (*Id.*) According to Defendant, Dave considered Plaintiff's teaching to be "somewhere in between acceptable and unacceptable," and notes that Dave considered a teaching evaluation below 3.2 out of 4 to be unacceptable. (*Id.* ¶¶ 100, 102.) In response, Plaintiff notes that the professor assigned to conduct Plaintiff's peer evaluation awarded him the highest possible rating on 15 of 19 categories. (LIU Classroom Observation Form (Dkt. 41-2 at Ex. T).) Plaintiff has also provided evidence showing that Plaintiff's average student evaluation scores for 2014 ranged from 3.27 to 3.71, and his overall average score for the spring and fall of 2014 was 3.41 out of 4. (Pl. 56.1 ¶101.1; Student Evaluation Reports for S. Patel. (Dkt. 41-2 at Exs. Q-R).)

5

Additionally, Plaintiff points to several drafts of Dave's recommendation indicating Plaintiff's FMLA leave played a significant role in Dave's decision. (Pl. 56.1 ¶¶ 96.1-96.12.) For example, in one draft, Dave wrote "a major concern was the approach [Plaintiff] took of securing the FMLA [sic]." (Dave Draft Recommendation Against Reappointment of S. Patel (Dkt. 41-2, Ex. M).) Plaintiff also has produced evidence that—against customary practice—Gross, Kane, and LIU counsel Matthew Siebel were all involved in drafting Dave's recommendation against reappointment. (Id. ¶¶ 96.16, 96.22.) Kane testified that Plaintiff's FMLA leave was "a matter of considerable focus" in Dave's original draft, and that this focus didn't "belong in the recommendation." (Tr. of May 1, 2018 Dep. of Jeffrey Kane ("Kane Dep.") (Dkt. 41-1 at Ex. D) at 61:5-10.) On August 28, 2015, Kane informed Plaintiff that his reappointment application had been denied. (Df. 56.1 ¶ 124.)

Defendant identifies two DPS faculty members who were reappointed in the spring of 2015. (Df. 56.1 ¶ 134.) Plaintiff identifies eight additional CoP faculty members who were reappointed that spring. (Decl. of Sarsvatkumar Patel ("Patel Decl.") (Dkt. 42) ¶ 23; Pl. 56.1 ¶ 134.1.) Plaintiff was the only CoP faculty member who was not reappointed. (Patel Decl. ¶ 24; Pl 56.1 ¶ 134.2.) Plaintiff asserts that, to his knowledge, he was the only one out of the 11 who participated in a discrimination lawsuit against LIU or took FMLA leave. (Patel Decl. ¶ 23.)

## II. LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98

(2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant may discharge its initial burden by demonstrating that the non-movant "has 'failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (alteration adopted).

"To determine whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" *Mikhaylov v. Y & B Trans. Co.*, No. 15-CV-7109 (DLI), 2019 WL 1492907, at *3 (E.D.N.Y. Mar. 31, 2019) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995)). While the court must draw all inferences in favor of the non-movant, the non-movant "may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)).

Finally, in considering Defendant's motion, the court is mindful that the Second Circuit "has long recognized 'the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent.'" *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 74 (2d Cir. 2016) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)).

## III. DISCUSSION

### A. Plaintiff's FMLA Claims

The FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" thereunder. 29 U.S.C. § 2615(a)(1). "FMLA claims come in at least two varieties: interference and retaliation." *Woods v. START Treatment & Recovery Cntrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017). Plaintiff asserts both interference and retaliation claims. (*See* Compl.)

#### 1. FMLA Retaliation

"At the summary judgment stage, retaliation claims brought pursuant to the FMLA are analyzed under the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Alexander v. The Bd. of Educ. of City of New York*, 648 F. App'x 118, 121 (2d Cir. 2016) (summary order). Under the *McDonnell Douglas* framework, Plaintiff bears the initial burden of establishing a prima facie case of retaliation. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016). "To establish a prima facie case of FMLA retaliation, a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Graziadio*, 817 F.3d at 429 (quoting *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir.2012)) (alteration adopted). The burden of establishing a prima facie case is "minimal." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

If a plaintiff establishes a prima facie case, the burden shifts to the defendant, who must "demonstrate a legitimate, non-discriminatory reason for its actions." *Graziadio*, 817 F.3d at

429. If the defendant meets its burden, then the onus is on the plaintiff to "show that defendant's proffered explanation is pretextual." *Id.* For a FMLA retaliation claim, a plaintiff may satisfy this burden by proffering evidence that the employer's retaliatory intent was a negative factor in the adverse employment action. *See Woods*, 864 F.3d at 169 ("[W]e defer to the Labor Department's regulation implementing a 'negative factor' causation standard for FMLA retaliation claims."); *see also* 29 C.F.R. § 825.220 ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions.").

Because the Plaintiff's prima facie burden is "minimal," the Second Circuit has encouraged courts to "proceed directly to the third step of the *McDonnel Douglas* analysis." where a plaintiff does not "argue that [the defendant] failed to proffer a legitimate . . . explanation for its adverse employment action," *Walsh*, 828 F.3d at 75-76. The court does so here.

Plaintiff has proffered sufficient evidence to permit a rational finder of fact to infer Defendant's non-discriminatory reasons for denying Plaintiff's reappointment application were pretextual and that Plaintiff's exercise of his FMLA rights was a negative factor in Defendant's decision. Indeed, a rational fact finder could infer as much from the explicit references to Plaintiff's FMLA leave in Dave's draft recommendations. Inferences of retaliatory intent could also be drawn from, *inter alia*, Dave's complaints about Plaintiff's leave to the executive committee, Dave's alleged remark to Plaintiff that his leave "could affect [his] reappointment and tenure," the atypical involvement of senior staff in drafting Dave's recommendation against reappointment, and the inconsistencies between Defendant's asserted reasons for not reappointing Plaintiff and its evaluation of other CoP faculty members' reappointment applications.

9

In sum, Plaintiff has proffered substantial evidence of pretext such that a rational fact finder could conclude that Plaintiff's FMLA leave was a negative factor in the denial of his reappointment. Therefore, Defendant's motion for summary judgment on Plaintiff's FMLA retaliation claim is DENIED.

### 2. FMLA Interference

To prevail on his interference claim,[2] Plaintiff must demonstrate 1) that he is an eligible employee under the FMLA; 2) that Defendant is an employer as defined by the FMLA; 3) that he was entitled to take leave under the FMLA; 4) that he gave timely notice to the defendant of his intention to take leave; and 5) that he was denied benefits to which he was entitled under the FMLA. *See Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017) (alterations adopted). "The fifth element . . . may be satisfied either by a formal denial or via a 'discouragement theory' of denial." *De Figueroa v. New York*, 403 F. Supp. 3d 133, 155 (E.D.N.Y. 2019). "Under this theory, a plaintiff is denied benefits under the FMLA if the plaintiff 'tried to assert her FMLA rights and was thereafter discouraged from taking FMLA leave.'" *Id.* (quoting *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 535 (S.D.N.Y. 2009)). A plaintiff relying on the discouragement theory may prevail by offering evidence that the "purported acts of discouragement would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise his or her FMLA rights." *Santiago v. Dep't of Transp.*, 50 F. Supp. 3d 136, 144 (D. Conn. 2014) (citations and quotation marks omitted).

---

[2] Unlike FMLA retaliation claims, FMLA interference claims are not analyzed under the *McDonnell-Douglas* framework. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 176 (2d Cir. 2006); *Jordan v. Cty. of Chemung*, 264 F. Supp. 3d 497, 505 (W.D.N.Y. 2017) ("In this Circuit, the burden-shifting test does not apply to interference claims; it applies only to retaliation claims.").

Here, the parties primarily dispute the fifth element.[3] Plaintiff testified that Dave threatened Plaintiff, by implying that taking FMLA leave would negatively affect Plaintiff's employment and his consideration for tenure. (*See* Patel Dep. at 120:2-7.) Defendant argues that this statement is insufficient to dissuade a similarly situated employee from exercising his FMLA rights (Mem. at 24-25; Reply at 10). This defies reality.

Plaintiff alleges that Dave told him that "nobody takes" FMLA leave, and that Plaintiff doing so "could affect [his] reappointment and tenure." (Patel Dep. at 120:2-7.) It is difficult to imagine a statement more discouraging than Dave's direct threat to Plaintiff's long-term job security. Even an employee of extraordinary resolve would think twice about continuing his leave in the face of such a direct threat.

If a jury were to credit Plaintiff's version of events, it could reasonably find that Plaintiff "tried to assert [his] FMLA rights and was thereafter discouraged from taking FMLA leave." *De Figueroa*, 403 F. Supp. 3d at 155. Therefore, Defendant's motion for summary judgment on Plaintiffs FMLA interference claim is DENIED.

**B.    Title VII Retaliation**

Under 42 U.S.C. § 2000e-3(a), it is "an unlawful employment practice for an employer to discriminate against" one of its employees because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or . . . testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Title VII retaliation claims, like FMLA retaliation claims, are "evaluated under the familiar

---

[3] To the extent that Defendant argues that Plaintiff did not give timely notice of his intent to take FMLA leave, that argument is meritless. The statute requires that a person contemplating taking FMLA leave "provide the employer with not less than 30 days' notice before the date the leave is to begin." 29 U.S.C. § 2612(e)(1). The parties do not dispute that Plaintiff gave initial notice of his intent to take FMLA leave on November 24, 2014, well over 30 days before his leave began on February 2, 2015. (*See* Df. 56.1 ¶ 70; Greco Mem.)

11

*McDonnell Douglas* three-step burden-shifting analysis." *Jones v. Target Corp.*, --- F. App'x ---, 2019 WL 6247900, at *1 (2d Cir. Nov. 22, 2019) (summary order) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

To establish a prima facie case for retaliation under Title VII, "an employee must show (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute*, 420 F.3d at 173. "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015).

### 1. Plaintiff's Prima Facie Case

The Second Circuit has "often emphasized" that "the burden of establishing [a] prima facie case in employment discrimination cases is minimal." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (citation omitted); *see also Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) ("The plaintiff's [prima facie] burden . . . is *de minimis*.").

Plaintiff has established a prima facie case of Title VII retaliation. Defendant argues that, while it had "general corporate knowledge" of Plaintiff's affidavit in the Bavadekar Action, "there is no evidence that any of the decision makers were aware of the [a]ffidavit." (Mem. at 16.) This is incorrect. First, Defendant stated in a response to an interrogatory that Kane, the person responsible for the final reappointment decision, was aware of the affidavit. (Df. Am. Responses to Interrogatories at 5.) Additionally, Dave testified that he was made aware—during a meeting at which Gross was also present—that Plaintiff had participated in some manner in the Bavadekar Action. (Dave Dep. at 43:9-13, 47:10-48:23.) At the very least, this evidence creates a

question of material fact as to whether the decisionmakers were aware of Plaintiff's protected activity.

Defendant next argues that Plaintiff cannot establish a causal connection between his protected activity and his nonreappointment. (Mem. at 16-17.) This argument also fails. Plaintiff has introduced evidence to "show[] that the protected activity," *i.e.*, his affidavit in the Bavadekar Action, "was followed closely by the adverse action," *i.e.*, the recommendation against his reappointment. *Smith*, 776 F.3d at 118. According to Dave's testimony, he and Gross were made aware of Plaintiff's participation in the Bavadekar Action in March 2015 (Dave Dep. at 47:10-48:23), and Dave issued his recommendation against reappointment in May 7, 2015.[4] (Df. 56.1 ¶ 96.)

### 2. Defendant's Legitimate, Non-Retaliatory Reason and Plaintiff's Showing of Pretext

Plaintiff does not dispute that Defendant has advanced legitimate, nonretaliatory reasons for denying Plaintiff's reappointment, namely dissatisfaction with the quality of Plaintiff's teaching, scholarship, and service. (*See* Opp. at 8; Mem. at 17-18.) Therefore, the court accepts that Defendant has met its burden and considers whether Plaintiff has proffered enough evidence to raise a question of material fact as to whether this justification was pretextual.

Plaintiff has satisfied his burden. Plaintiff has introduced credible evidence that Dave's review of Plaintiff's reappointment application included inaccurate information regarding Plaintiff's academic achievement and teaching evaluations. For example, Dave averred that "[a]t the time Plaintiff submitted his third reappointment application, he had not been published in a

---

[4] Defendant argues that adverse action wasn't actually taken until Plaintiff received his notice of reappointment in August 2015 or even until his eventual termination in August of 2016. This argument is specious. Under the process for reappointing tenure-track professors, Dave and Gross could not have retaliated against Plaintiff any sooner than Plaintiff alleges they did.

peer-reviewed journal while at LIU." (Affidavit of Dr. Rutesh Dave ("Dave Aff.") (Dkt. 38) ¶ 41.) However, according to Plaintiff's reappointment application, he published an article in fall 2013, while he was employed at LIU. (*See* Patel Reappointment Application (Dkt. 41-2 at Ex. S) at 20.) Next, Dave stated that he considered an evaluation score below 3.2 to "be an unacceptable evaluation." (Dave Aff. ¶ 38.) However, he also testified that Plaintiff's teaching was "somewhere between acceptable and unacceptable" (*Id.* ¶ 37) even though Plaintiff's average evaluation score for 2014 was 3.41 (Student Evaluation Reports for S. Patel). Finally, Plaintiff has also introduced evidence that Dave may have reviewed his reappointment application differently than that of Dr. Jun-Yen Yeh, whom Dave recommended for reappointment. (*See* Pl. 56.1 ¶¶ 137.1-137.8.)

This evidence is sufficient to raise a question of material fact as to whether Defendant's non-retaliatory reasons for denying Plaintiff's reappointment were pretextual. Therefore, Defendants' motion for summary judgement on Plaintiff's Title VII Retaliation claim is DENIED.

### C. Plaintiff's Claims Under State and City Law

Claims under the NYSHRL are analyzed under the same standard as claims brought under Title VII, *see Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999), and Title VII serves "as a floor below which the City's Human Rights law cannot fall," *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citations and quotation marks omitted). Therefore, because the court denies Defendant's motion for summary judgment on Plaintiff's Title VII retaliation claim, it likewise DENIES Defendant's motion for summary judgment on Plaintiff's NYSHRL and NYCHRL claims.

## IV. CONCLUSION

For the reasons explained above, Defendant's (Dkt. 35) motion for summary judgment is DENIED. The parties are DIRECTED to contact the chambers of Magistrate Judge James Orenstein regarding next steps in the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      February 20, 2020

NICHOLAS G. GARAUFIS
United States District Judge