UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SARSVATKUMAR PATEL,

                              Plaintiff,

                                                          **REPORT AND**
                                                          **RECOMMENDATION**
              -against-                                   17-CV-2170-NGG-SJB

LONG ISLAND UNIVERSITY,

                              Defendant.
----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

On December 21, 2021, this Court held a conference at which Plaintiff

Sarsvatkumar Patel ("Patel") reached a settlement with the defendant, Long Island

University ("LIU").  (Min. Entry & Order dated Dec. 21, 2021).  Pursuant to the

settlement, in return for a full release of all claims against LIU, Patel would receive an

agreed upon monetary payment.  The Court set a deadline for the parties to file a

stipulation of dismissal.  (*Id.*).  A written agreement was never finalized or executed, and

several weeks later, Patel indicated he was no longer interested in settlement, and

wished to proceed to trial.

LIU has now moved to enforce the settlement.  (Notice of Mot. to Enforce the

Settlement Agreement dated Feb. 10, 2023 ("Def. Mot."), Dkt. No. 66).  The Honorable

Nicholas G. Garaufis referred the motion to the undersigned for a report and

recommendation.  (Order Referring Mot. dated June 16, 2023).  LIU has also moved to

seal the unredacted versions of its motion papers.  (Mot. for Leave to File under Seal

dated Feb. 21, 2023 ("Mot. to Seal"), Dkt. No. 67).  For the reasons outlined below, the

Court respectfully recommends that LIU's motion to enforce be granted, and the Court

separately grants the motion to seal.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Patel commenced this action on April 10, 2017 against LIU alleging that he was subject to unlawful retaliation when he was denied reappointment to a "tenure track" academic position at LIU in 2015 and subsequently terminated from employment in 2016. (Compl. dated April 10, 2017 ("Compl."), Dkt. No. 1 ¶¶ 4–5, 35, 48). Patel alleges that the retaliation violated various civil rights statutes, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, New York State Human Rights Law, N.Y. Exec. Law §§ 296–301, New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101–8-134, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654. (Compl. ¶¶ 5, 49–53).

On July 20, 2017, the Honorable James Orenstein held an initial conference and set a schedule for discovery. (Min. Entry dated July 20, 2017). Judge Orenstein subsequently indicated that discovery was closed and that "settlement [did not] appear[] likely." (Min. Entry dated June 14, 2018). LIU filed a fully briefed motion for summary judgment on February 7, 2019, (Mot. for Summ. J. dated Nov. 15, 2018, Dkt. No. 35), which was denied by Judge Garaufis. *Patel v. Long Island Univ.*, No. 17-CV-2170, 2020 WL 869125, at *7 (E.D.N.Y. Feb. 21, 2020).

The case was reassigned to the undersigned on November 10, 2020. (Case Reassignment dated Nov. 10, 2020). On August 26, 2021, the parties asked Judge Garaufis to refer the parties to the undersigned for the purpose of holding a settlement conference, (Letter dated Aug. 26, 2021, Dkt. No. 55), which he did. (Order Referring Parties dated Aug. 30, 2021, Dkt. No. 56). After several adjournments, the Court held a virtual settlement conference on December 21, 2021 via video (the "December 2021 settlement conference"). (Min. Entry & Order dated Dec. 21, 2021).

Patel, a representative for LIU, and counsel for both sides attended the conference. (*Id.*). At the conference, the parties reached a settlement resolving all claims. (*Id.*). The settlement contemplated a payment of ███████ to Patel in return for a release of all claims against LIU. The Court directed the parties to file a stipulation of dismissal in the next 30 days, (*id.*), a deadline which was extended to February 4, 2022 at the request of the parties. (Mot. for Extension of Time to File dated Jan. 18, 2022, Dkt. No. 59; Order dated Jan. 19, 2022).

On February 4, 2022, LIU filed a joint status report on behalf of both parties to inform the Court that "the parties' settlement is no longer acceptable to Plaintiff and, as such, no stipulation of dismissal can be filed." (Status Report dated Feb. 4, 2022, Dkt. No. 61).

Judge Garaufis held a pretrial conference on October 20, 2022 at which he directed the parties to schedule a final settlement conference with the undersigned. (Min. Entry dated Oct. 20, 2022). The Court held a second settlement conference on January 20, 2023. (Min. Entry & Order dated Jan. 20, 2023). Patel, LIU's University Counsel, and counsel for both sides were present, but a final resolution was not achieved. (*Id.*).

LIU subsequently moved to enforce the settlement reached at the December 2021 conference. (Mot. for Settlement dated Feb. 10, 2023, Dkt. No. 65). LIU first filed its motion entirely under seal without any redacted version available to the public. (*Id.*). As such, the Court denied the motion without prejudice and directed that any new motion be filed along with a redacted version on the public docket. (Order dated Feb. 14, 2023).

On February 21, 2023, LIU filed a renewed motion to enforce the settlement, along with a redacted memorandum of law and exhibits as well as a motion for leave to file unredacted versions under seal.  (Def. Mot.; Mot. to Seal).[1]  Patel filed an opposition to the motion to enforce settlement on March 21, 2023, (Pl.'s Mem. of Law in Opp'n dated Mar. 21, 2023 ("Pl. Mem."), Dkt. No. 70), and LIU filed a reply on April 5, 2023. (Reply Mem. of Law in Further Supp. dated Apr. 5, 2023, Dkt. No. 72).

DISCUSSION

I.    <u>The Oral Settlement Is Enforceable</u>

The Court concludes the oral agreement reached at the December 2021 settlement conference is enforceable.

"A settlement agreement is a contract that is interpreted according to general principles of contract law."  *Acun v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 852 F. App'x 552, 553 (2d Cir. 2021) (quoting *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007)).  "It is beyond question that verbal, in-court settlement agreements may be binding and enforceable, although the agreement was never reduced to writing." *Samuel v. Bd. of Educ.*, No. 12-CV-4219, 2015 WL 10791896, at *3 (E.D.N.Y. Aug. 11, 2015), *aff'd*, 668 F. App'x 381, 382 (2d Cir. 2016).  When determining whether to enforce a settlement in the absence of a signed writing, courts are

> to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the

---

[1] LIU has filed both redacted and unredacted versions of its motion and supporting papers.  Because the only two redactions are to the monetary amount, (Mem. of Law in Supp. of Def.'s Mot. dated Feb. 10, 2023 ("Def. Mem."), attached as Ex. 1 to Def. Mot., at 3; Aff. of Stefanie Toren in Supp. of Def.'s Mot. dated Feb. 10, 2023 ("Toren Aff."), attached as Ex. 2 to Def. Mot., ¶ 11), the Court refers to the redacted version of the papers available on the public docket.

alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). "No single factor is decisive, but each provides significant guidance." *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 323 (2d Cir. 1997). "We therefore evaluate each of the *Winston* factors separately . . . and then assess them together." *Shinhan Bank v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, 739 F. App'x 55, 57 (2d Cir. 2018). The parties agree that the *Winston* factors apply here for determining whether the oral settlement agreement is enforceable. (Def. Mem at 4; Pl. Mem. at 3). And although the only record of the agreement or its terms is the short minute entry on the docket, reflecting that a settlement has been reached, the parties do not dispute much. That is, they do not disagree that a settlement was reached for a certain settlement amount, or that it was to be reduced to writing. Indeed, this is how Patel's lawyer describes the relevant events:

> On December 21, 2021, the parties participated in a virtual settlement conference . . . . After several hours of negotiation, the parties reached an agreement-in-principle to settle the case for a monetary sum. At the conclusion of the conference, counsel for the parties agreed that a settlement agreement would be memorialized in writing, and the court issued an order stating that the parties were required to file a stipulation of dismissal by January 10, 2022.[2]

(Aff. of Joshua Beldner in Opp'n to Def.'s Mot. dated Mar. 21, 2023 ("Beldner Aff."), Dkt. No. 69 ¶¶ 4–5). LIU's version of events is identical. (Toren Aff. ¶¶ 8–14). Where the parties part ways is Patel's assertion that there was a material term to be negotiated, namely the confidential treatment of their resolution. As explained below, this

---

[2] The Court directed the parties to file a stipulation of dismissal by January 20, 2022, (Min. Entry & Order dated Dec. 21, 2021), not January 10, as Patel's lawyer states in his papers.

assertion—that confidentiality was a material term to be negotiated and his similar

claim that other terms were unresolved—is meritless.  And the Court concludes that

Patel's arguments about the *Winston* factors are baseless, and therefore recommends

enforcement.

1. Express Reservation

The first factor, "the weightiest of the four," favors enforcement of the oral

settlement agreement.  *See Samuel*, 2015 WL 10791896, at *3 (quoting *Brady v. N.Y.

Police Dep't*, No. 08-CV-3572, 2011 WL 534116, at *1 (E.D.N.Y. Jan. 5, 2011), *report and

recommendation adopted*, 2011 WL 534246, at *1 (Feb. 7, 2011)).  "The court is to

consider . . . whether there has been an express reservation of the right not to be bound

in the absence of a writing[.]"  *Winston*, 77 F.2d at 80; *Acun*, 852 F. App'x at 552

("[N]either party made any express reservation to be bound only by a writing[.]"

(quoting *Powell*, 497 F.3d at 130)).  In considering whether any party has reserved the

right not to be bound absent a signed writing, courts examine both the oral agreement

and whether surrounding "facts and circumstances" implied this reservation.  *Pullman

v. Alpha Media Publ'g, Inc.*, No. 12-CV-1924, 2014 WL 5043319, at *10 (S.D.N.Y. Mar.

14, 2014), *report and recommendation adopted in relevant part*, 2014 WL 5042250, at

*3 (Sept. 10, 2014), *aff'd*, 624 F. App'x 774, 780 (2d Cir. 2015).

That the parties later intended to execute a signed agreement does not constitute

an implied or express reservation of rights.  *See Pullman*, 2014 WL 5043319, at *10.  "An

informal agreement can be binding even though the parties contemplate memorializing

their contract in a formal document as the parties have the power to contract as they

please."  *Tangtiwatanapaibul v. Tom & Toon Inc.*, No. 20-3852, 2022 WL 17574580, at

*2 (2d. Cir. Dec. 12, 2022) (quotations omitted).

Patel concedes that "a settlement-in-principle was reached on December 21, 2021" but argues that there was "clearly a mutual understanding that the settlement would be memorialized in writing." (Pl. Mem. at 4). There must be something more for the first factor to weigh against enforcement. And there is not. Here, following the Court's minute entry announcing that a settlement had been reached—and directing the parties to file a stipulation of dismissal within 30 days—Patel did not write to the Court to say, for example, that a settlement had not been reached, or that the Court should not impose a deadline for dismissal because terms remained to be negotiated.

Patel's conduct, thus, does not constitute reservation to be bound only if the agreement was reduced to writing. *See, e.g.*, *Lopez v. City of New York*, 242 F. Supp. 2d 392, 393 (S.D.N.Y. 2003) ("Even if the parties agreed to the settlement in open court with the intent to draft and sign a written settlement agreement and general release, this does not satisfy the express reservation requirement."). At bottom, "simply because the parties contemplated that the agreement would be reduced to writing does not indicate that they had agreed, either explicitly or implicitly, not to be bound until a written agreement was signed." *Aguiar v. New York*, No. 06-CV-3334, 2008 WL 4386761, at *5 (S.D.N.Y. Sept. 25, 2008), *aff'd as modified*, 356 F. App'x 523, 526 (2d Cir. 2009). As such, the need to have a final written agreement was a formality, not a prerequisite to any settlement.

None of the cases relied on by Patel are to the contrary. In *Peters v. Huttell*, the *pro se* plaintiff accepted an offer made by defendants over the phone, rather than in a settlement conference, with the explicit understanding that the settlement would not be finalized until the documents were signed. No. 15-CV-9274, 2022 WL 1126751, at *3 (S.D.N.Y. Apr. 15, 2022) ("Plaintiff alleges during their call that Defendants' counsel told

him the settlement would not be finalized until the documents were signed, and he initially accepted the offer with this in mind.").  Importantly, there were material terms to be resolved, which were unaddressed, even in defendants' recitation of events.  *Id.* ("Plaintiff alleges that the terms of the agreement included that Defendants be reprimanded or counseled, but at the end of the call counsel for Defendants only agreed to relay Plaintiff's concerns to Defendants, and therefore all of the terms were not agreed upon.").

In a situation—like *Peters*—where the court is not part of the settlement negotiations and the plaintiff is proceeding *pro se*, there are countervailing considerations or circumstances that counsel against enforcement, even if the reservation of a right not to be bound was unexpressed.  *Canales Sanchez v. Harris*, No. 09-CV-10323, 2011 WL 13128118, at *3 (S.D.N.Y. Aug. 5, 2011) ("[I]n the settlement context, depending on the degree of the *pro se* litigant's sophistication, his understanding of the process and his appreciation of the significance of his agreeing to terms of settlement may be less acute than that of a represented party."), *report and recommendation adopted*, 2011 WL 13128203, at *1 (Dec. 15, 2011), *aff'd,* 509 F. App'x 93, 94 (2d Cir. 2013).

But that is not this case.  No one in this case referenced the settlement being conditional, non-final, non-binding, or anything similar.  Indeed, Patel's counsel refers to the "agreement-in-principle," (Beldner Aff. ¶ 5), and repeatedly refers to a settlement being reached.  (*Id.* ¶ 11 ("the oral settlement reached on December 21, 2021"); *id.* ¶ 12 ("the oral settlement-in-principle that was reached by the parties")).

Nor are there facts and circumstances suggesting a lack of understanding on Patel's part.  He has not submitted a declaration or other evidence of his state of mind,

and does not say that he understood the settlement to be non-binding or non-final.  And the Court's direction to the parties to submit a stipulation of dismissal is further proof that the Court understood that Patel had agreed to settle without preserving a right to cancel or back out.  *Samuel*, 2015 WL 10791896, at *4 ("At no time whatsoever did Samuel express any desire, explicitly or impliedly, to retain the right to opt out of the oral agreement before memorializing it in writing.  Even though the parties still had to process paperwork, and the Court planned to hold subsequent conferences to oversee the progress of the settlement, plaintiff never reserved any right on the record, and the Court made it abundantly clear that the settlement agreement was final and binding.  The icing on the cake, of course, is that immediately after the settlement conference, Judge Bloom entered a written order memorializing the fact that the parties had reached an agreement and that the case was settled.  Given the record of proceedings, the first factor weighs heavily in favor of enforcement.").  The facts and circumstances suggest, if anything, buyer's remorse, not a reservation of a right not to be bound in the absence of a writing.  Indeed, his lawyer says as much—"A few days after the conference . . . Plaintiff expressed reservations [*i.e.*, doubts] about the oral settlement which was reached at the conference."  (Beldner Aff. ¶ 8; *id.* ¶ 12 ("After further discussion with Plaintiff, it became clear that Plaintiff did not want to accept the terms of the settlement.")).  Post-hoc misgivings about a settlement that is yet to be reduced to writing is not an understanding that the settlement was not final unless written.  "The settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing."  *Powell*, 497 F.3d at 129.

Nor is *Clark v. Gotham Lasik, PLLC* helpful to Patel.  The unique circumstances there—a defendant not present at the mediation conference where settlement was reached—are unlike this case.  No. 11-CV-1307, 2012 WL 987476, at \*1–\*3 (S.D.N.Y. Mar. 2, 2012), *report and recommendation adopted*, 2012 WL 987586, at \*1 (Mar. 23, 2012).  Moreover, even the mediator could not say that the parties there had reached agreement.  *Id.* at \*5 ("[T]he defendants do not agree that the terms reached at the mediation session were binding and enforceable, and . . . [there is] no affirmation from the mediator representing that the parties confirmed a complete agreement in his presence.").  Here, the parties—including Mr. Patel—unambiguously confirmed that they agreed to a settlement, and did so in the Court's presence.

Therefore, the first factor weighs in favor of enforcement.

2.  Partial Performance

The second factor, whether any party has partially performed, weighs in favor of neither party.  This factor "under the *Winston* test is met when one party has partially performed its obligations under the settlement, and that performance has been accepted by the party disclaiming the existence of an agreement."  *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 250 (E.D.N.Y. 2002).

LIU argues that the cessation of litigation on both sides and the reporting of the settlement on the public docket constitutes partial performance.  (Def. Mem. at 6–7.)  But no payment was made, and LIU's cessation of litigation did not impose any costs—discovery has long been completed, no trial has yet been scheduled, and after the settlement conference, little activity beyond these enforcement proceedings has taken place.  Such circumstances suggest, as some courts have found, the absence of any partial performance.  *Geneva Lab'ys Ltd. v. Nike W. Afr. Imp. & Exp. Inc.*, No. 19-CV-

4419, 2021 WL 7287611, at *7 (E.D.N.Y. Aug. 16, 2021) ("No arrangements have been made or instructions given for how to exchange funds, no settlement funds have been paid, no liens have been granted, the parties have not signed a written agreement, and the case has not been dismissed."), *report and recommendation adopted*, 2022 WL 673257, at *1 (Mar. 7, 2022); *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, No. 08-CV-321, 2011 WL 5531018, at *4 (S.D.N.Y. Nov. 14, 2011) (finding cessation of litigation activities and absence of payment show absence of any performance) (adopting report and recommendation); *Edwards v. City of New York*, No. 08-CV-2199, 2009 WL 2601311, at *4 (E.D.N.Y. Aug. 21, 2009) (adopting report and recommendation).

To be sure, the Second Circuit has "not specifically addressed" whether the cessation of litigation and the memorializing of the settlement agreement constitute partial performance.  *Acun*, 852 F. App'x at 555.  As such, "the absence of partial performance is at best neutral."  *Id*.

3.  Agreement to All Terms

The third factor, whether all terms have been agreed, weighs in favor of enforcement when "there was 'literally nothing left to negotiate.'"  *Winston*, 777 F.2d at 82 (quoting *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 76 (2d Cir. 1984)); *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 831 (2d Cir. 2019) (same).  The inquiry in this regard is whether the agreement "contained all of the material terms of the settlement."  *Acun*, 852 F. App'x at 555; *see also Ciaramella*, 131 F.3d at 325; *Tangtiwatanapaibul*, 2022 WL 17574580, at *3 ("Parties may choose to bind themselves before fully agreeing to all terms provided that the parties have agreed to the material terms.").  As such, "this factor favors enforcement even when the parties

are still negotiating certain terms." *Geneva Lab'ys Ltd.*, 2021 WL 7287611, at *7 (collecting cases).

Patel does not dispute that an agreement was reached on the settlement amount, which many a court has found to be the "most important term" in a settlement. *Id.* ("If the parties have agreed to the settlement amount, courts often find that this factor favors enforcement even when the parties are still negotiating additional terms.") (collecting cases). He argues instead that "all material terms were [not] agreed upon at the [December 2021] conference." (Pl. Mem. at 7). He provides an "example" of "one material term that was not discussed with specificity"—"the scope of confidentiality." (*Id.*).

There are several basic problems with this argument.

First, Patel's conduct and the record belie any suggestion that confidentiality—or any other term—remained to be negotiated. His counsel's affirmation recounts the events following the December 2021 conference:

The settlement conference was held on December 21, 2021; the same day the Court issued a minute entry directing a stipulation be filed by January 20, 2022. "A few days after the conference," that same month, Patel expressed doubts about the settlement, which he told his lawyer. (Beldner Aff. ¶ 8). And he and his lawyer had multiple conversations about the settlement. (*Id.*). On January 10, 2022, LIU's counsel wrote to Patel's counsel about paying the settlement, and Patel's counsel wrote back saying "I am still discussing certain issues with my client." (*Id.* ¶ 9). Patel and his counsel continued to discuss the settlement orally and in writing. (*Id.* ¶ 10). Eight days later, Patel's counsel sought from LIU's counsel an extension of time to file the stipulation of dismissal because he was "continuing [his] conversations about the oral

settlement reached." (*Id.* ¶ 11). Then on February 2, 2022, Patel's counsel told LIU's counsel that his client "no longer agreed" with the "settlement-in-principle that was reached by the parties." (*Id.* ¶ 12).

In counsel's telling, he and Patel never actually discussed confidentiality or even the written agreement with LIU's counsel. The sequence suggests that Patel simply unilaterally withdrew from the agreement without explanation. If confidentiality or any other term remained to be negotiated, one would expect Patel to communicate his position on that term—through a redline of LIU's draft, a new draft or demand, or something similar—at some point to LIU. But he never did anything of the sort. At no point did counsel ask for an amendment of the settlement or even communicate Patel's position on confidentiality—if there even was one—to LIU. Neither party suggests that any negotiations at all took place during the drafting process of the settlement agreement following the December 2021 settlement conference. (*See also* Toren Aff. ¶¶ 14–17). In fact, it appears the draft agreement was not even sent to Patel, because he backed out before LIU could do so. The sequence reflects only remorse and Patel's backing away from what he had agreed upon. There is no better evidence of this than his lawyer's letter to the Court (submitted jointly with LIU's counsel) on February 4, 2022: "the parties' settlement is no longer acceptable to Plaintiff and, as such, no stipulation of dismissal can be filed." (Status Report dated Feb. 4, 2022, Dkt. No. 61).

Second, the reference to confidentiality makes no sense, at least in the manner presented. Patel does not say whether he objects to the settlement being confidential or wants it to remain confidential. If he wants the settlement to be public, he does not explain why the confidentiality of the settlement amount (which is the only portion of the agreement that is secret) is material or important to him. And he does not explain

how, or if, his view about confidentiality differs in any material sense from LIU's position.  This absence of detail simply reinforces the conclusion that Patel's purported interest in confidentiality is a canard created in an attempt to back out of his agreement.

Indeed, in none of the *ex parte* settlement statements submitted to the Court did Patel ever mention confidentiality, let alone its importance.  The Court required these statements prior to the first settlement conference in December 2021 and again in January 2023.  (Letter dated Dec. 14, 2021, Dkt. No. 73; Letter dated Jan. 18, 2023 ("2023 *ex parte* Letter"), Dkt. No. 74).[3]  The January 2023 *ex parte* letter plainly suggests Patel had a change of his mind, not that he cared about confidentiality or that he believed this was a term left to negotiate.  (*See* 2023 *ex parte* Letter).  In other words, Patel first declared his interest in confidentiality after LIU moved to enforce the settlement.  These "changing theories of his case suggests he simply had a change of heart."  *Gromulat v. Wynn*, No. 20-CV-10490, 2022 WL 445779, at *4 (S.D.N.Y. Feb. 14, 2022).

Patel also contends that other topics "such as non-disparagement clauses, neutral references and the like" also were not discussed or agreed to at the December 2021 settlement conference.  (Pl. Mem. at 7).  But Patel fails to "put forth any evidence suggesting that [these topics were] material to the parties at the time of the negotiations," *Brannon v. City of New York*, No. 14-CV-2849, 2016 WL 1047078, at *3 (S.D.N.Y. Mar. 10, 2016) (adopting report and recommendation), other than his counsel's eleventh-hour say-so.  And again, like the confidentiality term, if these

---

[3] Because the statements were submitted by counsel *ex parte* to the Court's email address pursuant to the undersigned's Settlement Conference Procedures, (Magistrate Judge Sanket J. Bulsara's Settlement Conference Procedures ¶ 2), the Court has filed them both on the public docket under seal.

provisions had been important to Patel, he would have communicated with LIU's counsel about them, attempted to negotiate their resolution, ascertained how his position differed from LIU's position, or mentioned them to the Court prior to LIU's motion being filed. But he did none of these things, and the only conclusion is that they were not in fact material to the agreement or to him. *Alvarez v. City of New York*, 146 F. Supp. 2d 327, 336 (E.D.N.Y. 2001) ("At no time during the conference did plaintiff—either personally or through his attorney—raise the three outstanding issues he now claims had yet to be negotiated. Having accepted the terms and conditions of the settlement agreement, plaintiff cannot now allege—after he has accepted the settlement agreement—that other terms remained.").

Patel argues that the lack of agreement on even minor or technical terms can weigh against enforcement. His cases do not assist his position. For one thing, the question is whether material terms remain, not whether there are minor terms, to negotiate. He relies on the following phrase from the Second Circuit's decision in *Powell*: "We have held that even 'minor' or 'technical' *changes* arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing." *Powell*, 497 F.3d at 130 (emphasis added). *Powell* deals with how to weigh *changes* proposed when the parties are reducing the agreement to writing. It does not equate minor changes with a material term remaining to negotiate, as the next sentence in the opinion demonstrates: "Such changes are relevant, however, only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides in every respect." *Id.* (quotations omitted). In other words, minor changes can help assist in determining whether there were in fact material

terms outstanding for negotiation.  Neither *Powell* nor any other case holds that the mere presence of minor changes favors non-enforcement.  In any case, Patel cannot even establish the existence of minor changes in the post-settlement writing process, because he did not engage in that process at all.  He simply backed out the agreement, without even asking for LIU's proposed written agreement.  *See supra* at 13.  That makes his case unlike the ones he cites.  (*E.g.*, Pl. Mem. at 8 (citing *Abel v. Town Sports Int'l Holdings, Inc.*, No 09-CV-10388, 2010 WL 5347055, at *5 (S.D.N.Y. Dec. 23, 2010) ("The plaintiff proposed adding three provisions to the agreement . . . .  The defendants also added terms to the draft agreement [.]"))).

Thus, this third factor favors enforcement.

4.  Type of Contract Usually Committed to Writing

The fourth factor, whether the contract is a type typically memorialized in writing, also weighs in favor of enforcement.  This reference to a writing "is a written instrument whose status as a binding contract has been acknowledged either by signature or by express oral acceptance."  *Acun*, 852 F. App'x at 556.

Patel contends that "the parties did not represent in open court of their assent to the terms of the settlement, nor was their agreement ever reduced to writing."  (Pl. Mem. at 8).  This is not only contrary to the record, but belied by Patel's own presentation in opposition to LIU's motion.  Both parties told the Court during the settlement conference they reached agreement.  For this reason, the Court entered a minute entry that read: "A settlement was reached."  (Min. Entry & Order dated Dec. 21, 2021).[4]  And Patel's counsel agrees that is what took place.  (Beldner Aff. ¶ 5 ("After

---

[4] That the Court later wrote that "[a] final resolution was not achieved" after the second settlement conference, in January 2023, (Min. Entry & Order dated Jan. 20,

several hours of negotiation, the parties reached an agreement-in-principle to settle the case[.]"); *id.* ¶ 11 (referring to the "oral settlement reached"); *id.* ¶ 12 (referring to "the oral settlement-in-principle that was reached by the parties at the December 21, 2021 conference before Judge Bulsara"); *id.* ¶ 16).

Patel's argument appears to be that because there was no "open court" assent by him—in other words, his agreement was part of a closed-door, non-public settlement conference—this requirement was not met. But this conflates the requirement of New York's Civil Practice Law and Rule ("CPLR") 2104, which contains an "open court" requirement for settlement, with the fourth *Winston* requirement, which asks the more basic question: is this kind of agreement usually written or oral? *See Monaghan v. SZS 33 Assocs., L.P.*, 73 F.3d 1276, 1283 (2d Cir. 1996) ("New York law for a binding settlement . . . mandate[s] a signed writing, an order, or agreement in 'open court.'" (citing and quoting CPLR 2104)).

Assuming it even applies here, only "substantial compliance" with CPLR 2104 requirements is required.[5] *Monaghan*, 73 F.3d at 1283. The "open court" requirement does not require the agreement be made on the record in a courtroom open to the public during such recording. *In re Dolgin Eldert Corp.*, 31 N.Y.2d 1, 9–10 (1972) ("[T]he open

---

2023), does not imply that the Court did not believe a mutual understanding as to all material terms had not been achieved in December 2021, as Patel suggests. (Pl. Mem. at 8). Instead, the order merely reflects that the Court was unable to get Patel to revoke his rejection of the December 2021 agreement.

[5] If CPLR 2104 is a substantive, not a procedural, requirement, it would be applicable if this were a diversity case. But it is not. Patel's Title VII and FMLA claims make this a federal question case, and "[t]he weight of authority in this Circuit suggests that a court need only apply federal common law when evaluating a settlement in a case premised on federal question jurisdiction." *Meltzer v. Stier*, No. 15-CV-6184, 2017 WL 5032991, at *4 (S.D.N.Y. Nov. 2, 2017).

court exception, [is] necessary, it is repeated, only when there is no subscribed writing or other record to evidence the stipulation, does not extend to a conference in a Judge's chambers, even in these days of judicial intervention in settlement negotiations[.]").  It only means that the agreement be "formally memorialized in some manner on the court record."  *Acot v. N.Y. Med. Coll.*, 99 F. App'x 317, 317–18 (2d Cir. 2004) (holding "oral agreement reached before an administrative law judge is still considered to have occurred in open court"); *see also Canales Sanchez*, 2011 WL 13128118, at * 6 ("Even a court's informal notes of the terms are an adequate form of recordation.") (collecting cases).  And as noted, the Court's December 2021 minute entry accomplished that.

As to the question of whether agreements of this type—resolving an employment lawsuit based on alleged Title VII and FMLA violations—are typically written or oral, they are indeed typically written.  But *Winston* "would be a strange test if the fourth factor always favored finding no agreement on the ground that settlement agreements are usually written."  *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04-CV-1621, 2005 WL 1377853, at *9 (S.D.N.Y. June 9, 2005).  That is why "courts may consider 'the complexity of the underlying agreement' in analyzing this factor." *Gromulat*, 2022 WL 445779, at *4 (quoting *Ciaramella*, 131 F.3d at 326 ("We have also found that the complexity of the underlying agreement is an indication of whether the parties reasonably could have expected to bind themselves orally.")).  And, here, "the underlying agreement is a simple settlement of one employee's discrimination claims against his employer."  *Id.*  Patel has not demonstrated that the terms that LIU was contemplating were anything unusual or non-standard, unsuited to some unique circumstance of his, or so unusually complex that a party could expect that resolution would only ever be effective if written.  Nor could he since he never asked for and did

not comment on LIU's written draft agreement.  Given that there was an express oral acceptance by Patel before the Court, as recorded and announced in the Court's order following the conference, this fourth factor favors enforcement, *Acun*, 852 F. App'x at 556, but only slightly since the expectation is that these types of agreements and cases are almost always resolved in a writing.[6]  *See Winston*, 777 F.2d at 83 ("Where, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation.").

*      *      *

"A party cannot avoid a settlement by refusing to sign settlement papers memorializing the settlement terms reported to the court."  *Acot*, 99 F. App'x at 318.  Yet that is precisely what Patel is attempting to do.  However, three of the four *Winston* factors favor enforcement, and the other is only neutral.  In light of the totality of the circumstances, the Court finds the settlement is enforceable and respectfully recommends that LIU's motion be granted.  *See, e.g.*, *Acun*, 852 F. App'x at 556 (affirming district court's enforcement of settlement agreement in employment discrimination action); *Gromulat*, 2022 WL 445779, at *4 (enforcing settlement agreement in employment discrimination action).

---

[6] The two cases Patel cites in support of his position are, again, unlike his case.  As noted above, *supra* at 10, in *Clark* there were doubts about the party's presence at a mediation.  And in *Cornelius v. Independent Health Association, Inc.*, the court was similarly unconvinced that a binding agreement had actually been reached at the mediation, and moreover, any written agreement contained a right of revocation, which the court acknowledged that plaintiff could be said to have invoked.  912 F. Supp. 2d 26, 32 (W.D.N.Y. 2012).

II.     <u>The Motion to Seal Is Granted</u>

LIU has filed a motion to seal the unredacted version of its memorandum of law in support of the motion to enforce the settlement agreement and the unredacted exhibits.  (Mot. to Seal).  The motion to seal is granted.  The motion to enforce settlement is accompanied by redacted filings on the public docket, and the redactions therein are narrowly tailored to shield only that information which is necessary to be under seal: the settlement amount.  As such, the items proposed to be sealed are limited and satisfy the standards for limiting public access, as set forth in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).  The motion to seal is therefore granted.

<u>CONCLUSION</u>

For the reasons stated above, it is respectfully recommended that LIU's motion for settlement enforcement be granted and the parties be directed to perform the settlement, namely that LIU be directed to pay the agreed upon amount to Patel and he be directed to execute a general release of all claims against it. Separately, the motion to seal is granted.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision." (quotations omitted)).

SO ORDERED.

*/s/ Sanket J. Bulsara* July 31, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York